**Aron LOPEZ–SMITH, Petitioner–Appellant,**

v.

**Robert HOOD, Respondent–Appellee.**

**No. 96–17091.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 13, 1997.

Decided Aug. 11, 1997.

Victoria A. Brambl, Federal Public Defender, Tucson, AZ, for Petitioner–Appellant.

Robert L. Miskell (argued), and E. David Reyes (on the briefs), Assistant United States Attorney, Tucson, AZ, for Respondent–Appellee.

Before: SNEED and KLEINFELD, Circuit Judges, and WALLACH,* International Trade Judge.

KLEINFELD, Circuit Judge:

This case raises several issues of the law of extradition. Most notably, the question arises whether mental deficiencies which would render a person incapable of standing trial entitle him to deferral of extradition.

## FACTS

Mexico sought extradition of Lopez–Smith, for murder. Magistrate Judge Raymond Terlizzi, after careful consideration, certified that he was extraditable. Lopez–Smith was charged with murder in Mexico. A warrant for his arrest was issued by a Mexican court. Evidence before the magistrate established probable cause to believe that Lopez–Smith had indeed committed the murders.

* The Honorable Evan J. Wallach, Judge of the United States Court of International Trade, sitting by designation.

Lopez-Smith petitioned for a writ of habeas corpus on the grounds that (1) Lopez–Smith was incompetent to undergo extradition proceedings because of mental deficiencies; (2) the magistrate judge had refused to consider evidence addressing whether the United States ought to exercise its discretion to extradite; (3) Lopez–Smith had offered evidence of official corruption relating to Lopez–Smith's case. The district judge denied the writ, and Lopez–Smith appeals.

The accusation against Lopez–Smith is that he drove from Douglas, Arizona, to Tucson, Arizona, and bought a .45 Colt semiautomatic pistol. Then he drove to Agua Prieta, a town in Sonora, Mexico, approached two brothers in a night club there, and shot them dead. He then fled to the United States, where he was arrested, still in possession of the pistol. The case has not been rendered moot by extradition, because a panel of this court stayed extradition pending disposition of Lopez–Smith's appeal.

## ANALYSIS

We review denial by the district court of a writ of habeas corpus. The petition for a writ of habeas corpus was based on error claimed to have occurred in the extradition proceedings before the magistrate judge.

### I. Mental Competence.

■ The magistrate judge allowed Lopez–Smith to make an offer of proof that he was incompetent to stand trial. A psychologist submitted a report and testified. The psychologist put on proof that Lopez–Smith's intelligence was on the borderline between low-average and retarded. Based on history provided by Lopez–Smith's mother, and his responses to the psychologist, it appeared likely that Lopez–Smith had suffered from organic brain damage since birth. His ability to remember facts and give accurate history was substantially impaired. So was his ability to listen to and understand the legal proceedings against him.

The magistrate judge decided that this evidence was not relevant. Thus the evidence of incompetence was disregarded. Lopez–Smith argues that refusal to consider the evidence of incompetence denied due process of law under the Fifth Amendment.

■ Criminal trial of an incompetent defendant violates his constitutional right to due process of law. *Cooper v. Oklahoma,* — U.S. ——, ——, 116 S.Ct. 1373, 1376, 134 L.Ed.2d 498 (1996). This principle, though, does not apply to Lopez–Smith, because if extradited he will not be subject to a criminal trial in the United States. His trial will be in Mexico. That sovereign nation has its own constitution and is not bound by ours. *Cf. United States v. Verdugo–Urquidez,* 494 U.S. 259, 110 S.Ct. 1056, 108 L.Ed.2d 222 (1990). "United States due process rights cannot be extended extraterritorially." *Kamrin v. United States,* 725 F.2d 1225, 1228 (9th Cir. 1984); *see also Neely v. Henkel,* 180 U.S. 109, 122–23, 21 S.Ct. 302, 306–07, 45 L.Ed. 448 (1901).

The Supreme Court considered extradition of an insane person accused of murder in *Charlton v. Kelly,* 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913). The court held that evidence of insanity was properly excluded, because extradition is "not to be regarded as in the nature of a final trial by which the prisoner could be convicted or acquitted of the crime charged against him, but rather of the character of those preliminary examinations ... for the purpose of determining whether a case is made out which will justify the holding of the accused." *Id.* at 460, 33 S.Ct. at 949. The court considered both insanity in the sense in which it bears on guilt, and also insanity in the sense of incompetence to stand trial, and held that both kinds of insanity were irrelevant to extradition. The Court spoke expressly on incompetence to stand trial: "If the evidence was only for the purpose of showing present insanity by reason of which the accused was not capable of defending the charge of crime, it is an objection which should be taken before or at the time of his trial for the crime, and heard by the court having jurisdiction of the crime." *Id.* at 462, 33 S.Ct. at 950.

The rule in *Charlton* has not been overruled or qualified, and remains binding. A relatively recent First Circuit case, *Romeo v. Roache,* 820 F.2d 540 (1st Cir.1987), follows

*Charlton,* and holds that mental competency is a matter to be determined by the jurisdiction trying the offense, not by the extraditing jurisdiction. *Id.* at 544. In its unsigned per curiam disposition, the First Circuit notes that it is not deciding how it would view a due process argument by a catatonic prisoner who had lost all contact with reality and was totally unable to communicate, though the prisoner was a paranoid schizophrenic unable to consult with his attorneys with a reasonable degree of rational understanding. We are not sure the degree of incompetence makes any difference, but even if it does, the record shows Lopez–Smith appears to be in no worse condition than the petitioner in *Romeo.*

Because *Charlton* and subsequent authority compare an extradition hearing to a preliminary hearing, we have searched for authority on whether a preliminary hearing may result in a decision binding over the defendant, where he is incompetent to assist in his defense. Oddly, despite the frequently repeated proposition that extradition is like a preliminary hearing, neither side has cited any authority, and we have found none, providing an answer to this question. Thus the comparison to a preliminary hearing has turned out to be a blind alley, for purposes of answering the question before us.

There is one case in the books supporting Lopez–Smith's position, that incompetency is a defense to extradition. A published district court decision in this circuit adopts a magistrate judge's opinion holding that competence is relevant and "necessary" to extradition. *In re Artukovic,* 628 F.Supp. 1370, 1375 (C.D.Cal.1986), motion for stay denied, 784 F.2d 1354 (9th Cir.1986). This holding cannot be reconciled with *Charlton* and *Romeo.* The holding in the district court order adopting the magistrate's opinion in *Artukovic,* that competence is relevant and necessary in extradition proceedings, is overruled.

There is logic to petitioner's position. It is conceivable that in some circumstances, a mentally competent accused might be able to help his attorney prevent certification of extraditability, while an incompetent accused could not. But the logic breaks down when we try to determine what would be done with a person determined to be incompetent. It would not make sense to commit him until he was fit to stand trial, under 18 U.S.C. § 4241(d)(2)(A), because the United States would never try him. Nor would it make sense to hospitalize him in the United States until his release would no longer create a substantial risk of injury to persons to damage to property, under 18 U.S.C. § 4246, because that would entirely ignore the right of another country to try him. Application of the ordinary procedures for persons incompetent to stand trial would interfere with the President's power to honor extradition treaties by delivering to their custody persons charged in foreign countries with crimes. Nor is it clear that incompetence to assist in one's defense, important in an adversarial system of criminal justice, matters as much in the inquisitorial system one ordinarily finds in non-English speaking countries.

We held in *Parretti v. United States,* 112 F.3d 1363 (9th Cir.1997), that arrest and detention without bail, pursuant to an extradition request, violated the Fourth Amendment and the Due Process Clause, where there had been no evidentiary showing of probable cause to believe that an extraditable crime had been committed, and the foreign government had not yet requested extradition. *Parretti* is distinguishable on the grounds, among others, that it speaks only to the probable cause showing which must be made at an extradition hearing and the circumstances in which bail can be denied, and does not speak to incompetence to stand trial. This case also in no way resembles, and is not governed by *In re Geisser,* 554 F.2d 698 (5th Cir.1977), *appeal after remand,* 627 F.2d 745 (5th Cir.1980) or *Plaster v. United States,* 720 F.2d 340 (4th Cir.1983), *appeal after remand,* 789 F.2d 289 (4th Cir. 1986).

## II. The Secretary's Discretion.

■ Our treaty with Mexico provides for discretionary, not mandatory, extradition:

Neither Contracting Party shall be bound to deliver up its own nationals, but the executive authority of the requested Party shall, if not prevented by the laws of that Party, have the power to deliver them up

if, in its discretion, it be deemed proper to do so.

Extradition Treaty With Mexico, Article 9, Section 1. A statute applicable to such treaties says that the Secretary of State "may" order surrender of an American citizen whose extradition had been requested. 18 U.S.C. § 3196. Likewise, 18 U.S.C. § 3186 says that the Secretary of State "may" order the person to be delivered to an agent of the foreign government to be tried.

Lopez-Smith argues that because a discretionary decision is to be made, he is constitutionally entitled under the Due Process Clause to an opportunity to present the equities in his favor. He argues that two equities bear on whether discretion ought to be exercised to extradite him. One is his mental incompetence. The other is that, according to his sister, when she went to the authorities in Agua Prieta, "instead of listening to what we had to say about our brother, they told us that they would get rid of the case if we paid them $20,000 in United States dollars."

The magistrate judge properly excluded evidence addressing the exercise of discretion whether to extradite, because the magistrate judge has no discretion. Extradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function. *Metzger* 46 U.S. [5 How.] 176, 188, 12 L.Ed. 104(1847); *Demjanjuk v. Petrovsky*, 776 F.2d 571, 584 (6th Cir.1985); *see also* Restatement (Third) of Foreign Relations Law of the United States § 326 (1987); M. Cherif Bassiouni, *International Extradition: United States Law and Practice* 768–69 (3d ed.1996).

The statute says that if the magistrate judge "deems the evidence sufficient to sustain the charge," then the magistrate judge "shall" certify that to the Secretary of State, and "shall" issue a warrant for the commitment of the accused. The magistrate judge has no discretionary decision to make. As in *Charlton v. Kelly*, 229 U.S. 447, 461–62, 33 S.Ct. 945, 949–50, 57 L.Ed. 1274, (1913), the magistrate judge properly refused to hear evidence which did not bear on whether there was probable cause to believe that two

murders had been committed in Agua Prieta, and that Lopez–Smith had committed them.

As for the Secretary of State's discretion, the aspect of it important to this case is that it is the Secretary's, not the magistrate judge's. For that reason, it is also for the Secretary to decide what evidence might have a bearing upon its exercise. There is no reason why the magistrate judge should decide what evidence might be useful to the Secretary of State.

The procedure established by statute requires the magistrate judge to issue a certificate, if extradition is permissible. The Secretary of State may not extradite unless and until the certificate is issued. *See* 18 U.S.C. § 3184; *Hooker v. Klein*, 573 F.2d 1360, 1367–68 (9th Cir.1978). Once the certificate issues, the Secretary may exercise discretion whether to extradite an American national. The Secretary's exercise of discretion need not be based upon considerations individual to the person facing extradition. It may be based on foreign policy considerations instead. "The Secretary of State may exercise executive discretion based on technical, humanitarian, or political grounds." Bassiouni at 768. We suppose there is nothing to stop Lopez–Smith's lawyer from putting together a presentation showing why the Secretary ought to exercise discretion not to extradite Lopez–Smith, and mailing it to the Secretary of State. As for whether the Secretary of State considers the material, and how the Secretary balances the material against other considerations, that is a matter exclusively within the discretion of the executive branch and not subject to judicial review. "[T]he Secretary of State, exercising executive discretion through delegation of this authority by the President, may refuse to extradite a relator despite a judicial determination that extradition would be compatible with the terms of the applicable treaty." Bassiouni at 108.

### III. Other Arguments.

There is frequently quoted (but not followed) dictum, that "procedures or punishment so antipathetic to a federal court's sense of decency" might require reexamination of the general principle that an extradit-

ing court will not inquire into the procedures or treatment awaiting a surrendered fugitive in the requesting country. *Gallina v. Fraser,* 278 F.2d 77, 79 (2d Cir.1960), quoted in *Arnbjornsdottir–Mendler v. United States,* 721 F.2d 679, 683 (9th Cir.1983). We do not reach the question of whether that dictum is correct. We assume for purposes of discussion that it is.

 Lopez-Smith argues that because of the attempted extortion claimed in his sister's affidavit, extradition should have been denied under the dictum in *Gallina.* Lopez-Smith's sisters say they went to "the public ministry (Ministerio Publico) in Agua Prieta, Sonora, Mexico, to ask their help," and we "spoke with a lawyer, M-, and the Commander, A-." It is not clear whether the lawyer was a public official or whether he was a private lawyer saying that he thought he could defeat the case but would require a retainer. We assume for purposes of discussion however, that this is evidence of official extortion, a promise to dismiss the murder charges in exchange for $20,000. If the allegations are true, and if there was an attempt at extortion of $20,000 by government officials, that would be a blot upon the reputation of the government of Mexico. But generally, under what is called the "rule of non-inquiry" in extradition law, courts in this country refrain from examining the penal systems of requesting nations, leaving to the Secretary of State determinations of whether the defendant is likely to be treated humanely. *See Arnbjornsdottir–Mendler v. United States,* 721 F.2d 679, 683 (9th Cir.1983); Bassiouni at 486–92. If there is an exception to the rule of non-inquiry based on the *Gallina* dictum, as we assume without deciding, nevertheless the facts in this case are not so egregious as to invoke the dictum.

 Lopez-Smith argues that the interposition of magistrate judges between the foreign government's request and the Secretary of State, and the Secretary of State's participation, violates constitutional requirements of separation of powers. We agree with the conclusion of the Second Circuit, that the

extradition statutes do not violate separation of powers doctrine. *Lo Duca v. United States,* 93 F.3d 1100 (2nd Cir.1996). Lopez-Smith also argues that the district court erred by denying a stay of extradition pending appeal of the order denying the writ of habeas corpus. This issue is moot, because a panel of our court granted the stay.

## CONCLUSION

The district court's denial of Lopez-Smith's petition for a writ of habeas corpus is AFFIRMED.