**Suwit PRASOPRAT, Petitioner,**

v.

**Michael BENOV, Warden,[1] Respondent.**

**No. CV028751HLHJWJ.**

United States District Court,
C.D. California,
Western Division.

Nov. 25, 2003.

---

1. The Court has substituted Michael Benov, the current warden of the Los Angeles Metropolitan Detention Center, as respondent to this Petition in place of W.H. Siefert, the former warden.

Barry O. Bernstein, Burbank, CA, for petitioner.

Daniel S. Goodman, Mark Aveis, Los Angeles, CA, for respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

HUPP, District Judge.

Pursuant to 28 U.S.C. § 636(b)(1)(C), the Court has reviewed the instant Petition for Writ of Habeas Corpus and other papers along with the attached Report and

Recommendation of the United States Magistrate Judge, and has made a *de novo* determination of the Report and Recommendation. Further, the Court has engaged in a de novo review of those portions of the Report to which Petitioner has objected.

IT IS ORDERED that a Judgment be entered denying the instant Petition.

IT IS FURTHER ORDERED that petitioner's April 3, 2003 request that this court take judicial notice of a *Los Angeles Times* article about Thailand's war on drugs be denied.

IT IS FURTHER ORDERED that the Clerk shall serve forthwith a copy of this Order and the Judgment of this date on petitioner and counsel for respondent.

## REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

JOHNSON, United States Magistrate Judge.

This Report and Recommendation is submitted to the Hon. Harry L. Hupp, United States District Judge, by United States Magistrate Judge Jeffrey W. Johnson, pursuant to 28 U.S.C. § 636 and General Order 194 of the United States District Court for the Central District of California. For the reasons discussed below, it is recommended that the instant Petition be dismissed with prejudice.

## I. BACKGROUND

In 1998, Drug Enforcement Administration ("DEA") Special Agent PiamBoon Tepsuporn was investigating heroin trafficking between the Kingdom of Thailand and the United States. ("Petition for a Writ of Habeas Corpus by a Person in Federal Custody Pursuant to Title 28 United States Code Section 2241," p. 7.)[2] At that time, a confidential informant ("CI") informed him of petitioner's suspected involvement in the trafficking. (*Id.* at 8.) The DEA conducted surveillance of petitioner for the next three years. (*Id.* at 8–11.)

On May 17, 2001, an Assistant United States Attorney, acting for and on behalf of the Government of the Kingdom of Thailand, filed a complaint for an extradition arrest warrant against petitioner and another individual. (Opposition, p. 1.) That same day, United States Magistrate Judge George T. Swartz issued an arrest warrant. (*Id.*) On June 5, 2001, United States Magistrate Judge Brian Q. Robbins held a detention hearing and ordered petitioner detained. (*Id.*) On June 15, 2001, the United States filed a request for extradition.

On December 11, 2001, petitioner filed a motion for discovery. The motion sought "any and all documentation or any other evidence that shows the current Thai law, drug policies, penalties for drug offenses, and political agenda relating to drugs." (*Id.* at 2.) Petitioner also sought "names and access to United States officials most qualified on above-mentioned subjects for the purpose of interviews, depositions, or to include on witness lists." (*Id.*) On February 5, 2002, United States Magistrate Judge Jeffrey W. Johnson held a hearing and denied the motion. (*Id.* at 3.)

On April 24, 2002, Magistrate Judge Johnson held an extradition hearing. (*Id.*) After hearing testimony and viewing a videotape made during the surveillance of petitioner, the magistrate judge found that there was probable cause to believe that

---

**2.** Along with the form "Petition for Writ of Habeas Corpus by a Person in Federal Custody (28 U.S.C. § 2241)" (hereinafter "Form Petition"), petitioner filed a memorandum of points and authorities entitled "Petition for a Writ of Habeas Corpus by a Person in Federal Custody Pursuant to Title 28 United States Code Section 2241" (hereinafter "Petition").

petitioner was the individual charged in Thailand and that there was probable cause that the fugitive was engaged in the charged offense, conspiracy to distribute heroin. (*Id.*) On April 30, 2002, Magistrate Judge Johnson issued an extradition certification finding petitioner extraditable and certifying the matter to the United States Secretary of State. (*Id.* at 4.) In that certification, the magistrate judge concluded that he had subject matter jurisdiction, that he had personal jurisdiction over petitioner, that an extradition treaty between the United States and the Kingdom of Thailand was at all relevant times in full force and effect, that the offense with which the fugitive is charged in Thailand was an extraditable offense under the treaty, and that there was probable cause to believe that the fugitive is the person named in the Thai arrest warrant and committed the charged offense. (*Id.*; 4/30/02 Extradition Certification, p. 3.)

On October 31, 2002, petitioner filed in the Ninth Circuit a request to stay his extradition pending the outcome of a petition for writ of habeas corpus. The motion was transferred to this Court, and Magistrate Judge Johnson granted the motion. On December 23, 2002, petitioner filed the instant Petition for Writ of Habeas Corpus by a Person in Federal Custody (28 U.S.C. § 2241).

## II. DISCUSSION

### A. Legal Standard

■ Extradition from the United States is governed by 18 U.S.C. § 3184, which confers jurisdiction on any justice or judge of the United States or any authorized magistrate to conduct an extradition hearing under the relevant extradition treaty between the United States and the requesting nation. The extradition magistrate's authority is limited to determining whether (1) the crime is extraditable, and (2) probable cause exists to sustain the

charge. *Cornejo–Barreto v. Seifert*, 218 F.3d 1004, 1009 (9th Cir.2000). If these two requirements are met, the extradition magistrate must certify the individual as extraditable to the Secretary of State. *See* 18 U.S.C. § 3184. The magistrate judge has no discretion; extradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent the statute interposes a judicial function. *Lopez–Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir.1997).

The well-settled "rule of non-inquiry" requires extradition courts to refrain from inquiring into "procedures or treatment which await a surrendered fugitive in the requesting country." *See, e.g., Mainero v. Gregg*, 164 F.3d 1199, 1205 n. 6 (9th Cir. 1999); *Arnbjornsdottir–Mendler v. United States*, 721 F.2d 679, 683 (9th Cir.1983).

■ "The scope of habeas review of an extradition order is severely limited." *Mainero*, 164 F.3d at 1205. In the area of extradition, habeas corpus is not available except to determine three specific questions: (1) whether the extradition court had jurisdiction; (2) whether the offense charged was within the extradition treaty; and (3) whether there was any evidence warranting a finding that there were reasonable grounds to believe the accused guilty. *Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925); *accord Mainero*, 164 F.3d at 1205; *Bozilov v. Seifert*, 983 F.2d 140, 142 (9th Cir.1992). Implicit within these questions are whether the extradition court had jurisdiction over the fugitive, and whether the extradition treaty was in full force and effect. *See Hooker v. Klein*, 573 F.2d 1360, 1368 (9th Cir.1978). If these elements are present, the decision of the extradition magistrate "may not be reviewed on habeas corpus." *Charlton v. Kelly*, 229 U.S. 447, 456, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).

The reason for strictly limiting the jurisdiction of extradition and habeas courts to consideration of the specific questions discussed above has been expressed as follows:

> The need for flexibility in the exercise of Executive discretion is heightened in international extradition proceedings which necessarily implicate the foreign policy interests of the United States. Thus, while Congress has provided that extraditability shall be determined in the first instance by a judge or magistrate, 18 U.S.C. § 3184, the ultimate decision to extradite is ordinarily a matter within the exclusive purview of the Executive.

*Emami v. U.S. District Court,* 834 F.2d 1444, 1454 (9th Cir.1987) (internal quotation marks omitted) (quoting *Escobedo v. United States,* 623 F.2d 1098, (5th Cir.), *cert. denied,* 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980)).

■ United States citizenship does not bar extradition by the United States. *Charlton,* 229 U.S. at 467–68, 33 S.Ct. 945; *Quinn v. Robinson,* 783 F.2d 776, 782 (9th Cir.1986).

**B. Discovery Motion**

Petitioner claims that the extradition magistrate violated his due process rights by denying his discovery motion seeking disclosure of information relating to the use of the death penalty as punishment for drug crimes in Thailand. (Form Petition, p. 3.)

■ However, a fugitive in an extradition case has no right to discovery. *See Jhirad v. Ferrandina,* 536 F.2d 478, 484 (2d Cir.1976); *Matter of Extradition of Mainero,* 990 F.Supp. 1208, 1220 n. 26

(S.D.Cal.1997); *see also id.* at 1222 n. 33 ("There is no authority that exists that requires a magistrate judge to authorize compelled disclosures of explanatory information."). In addition, an extradition magistrate does not have discretion to consider a discovery request for, or make an inquiry into, the conditions that might be encountered by a fugitive upon return to the requesting country. *See Matter of the Extradition of Sandhu,* 886 F.Supp. 318, 321–23 (S.D.N.Y.1993) (denying request to present evidence of treatment that fugitive will receive upon return to India, based on "rule of non-inquiry"); *Sindona v. Grant,* 619 F.2d 167, 174–75 (2d Cir.1980) (degree of risk to fugitive's life from extradition is "an issue that properly falls within the exclusive purview of the executive branch"). Petitioner's citations to *Yin–Choy v. Robinson,* 858 F.2d 1400, 1407 (9th Cir.1988), (Petition, pp. 13–14), are not contrary to this principle.[3]

■ Further, a discovery ruling in an extradition proceeding is not reviewable by a habeas court; habeas review is limited to the three specific questions discussed above. *Charlton v. Kelly,* 229 U.S. 447, 457, 33 S.Ct. 945, 57 L.Ed. 1274 (1913) ("[M]ere errors in the rejection of evidence are not subject to review by writ of habeas corpus."); *see also McNamara v. Henkel,* 226 U.S. 520, 525, 33 S.Ct. 146, 57 L.Ed. 330 (1913) (same). "Review by habeas corpus ... tests only the legality of the extradition proceedings; the question of the wisdom of extradition remains for the executive branch to decide." *Sindona,* 619 F.2d at 174.

---

3. In *Yin–Choy,* 858 F.2d at 1407, the court stated that "the extradition court has the inherent power to order such discovery procedures as law and justice require" and that "[i]n exercising its discretion to grant or deny discovery, an extradition court should consider that extradition proceedings are not to be converted into a dress rehearsal for trial and whether the resolution of the contested issue would be appreciably advanced by the requested discovery." (Internal quotation marks omitted.)

█ As the government points out, statements in a few Ninth Circuit cases contemplating habeas review of discovery rulings in extradition proceedings are dicta, setting forth assumptions on uncontested issues. (Opposition, p. 9; *see Quinn v. Robinson*, 783 F.2d 776, 817 n. 41 (9th Cir.1986),[4] *Emami v. U.S. District Court*, 834 F.2d 1444, 1452 (9th Cir.1987), and *Yin–Choy*, 858 F.2d at 1407). Applying these cases to the present case leads to the conclusion that discovery regarding use of the death penalty would not have advanced the court's resolution of the contested issues properly before it. In contrast to the case at bar, the discovery sought in each of the cited cases was on an issue over which the habeas court had jurisdiction. A habeas court's review of an extradition magistrate's discovery ruling on an issue within the habeas court's jurisdiction is a different matter than permitting a habeas court to review an extradition magistrate's discovery ruling that is completely unrelated to any of the issues reviewable on habeas. Accordingly, this habeas Court lacks jurisdiction to review the denial of petitioner's discovery request.

█ Moreover, even if an extradition court's ruling on a discovery motion were reviewable, there was no error here. Petitioner did not seek discovery on any of the questions within the extradition judge's authority. Rather, petitioner sought discovery on Thailand's use of the death penalty to punish persons convicted of drug offenses. Unarguably, the authority to deny extradition based on the requesting country's use of the death penalty resides with the Executive Authority. *See* United States–Thailand Extradition Treaty, Article 6.[5] Since petitioner's discovery request was unrelated to any of the inquiries within the extradition magistrate's jurisdiction, and therefore would not have appreciably advanced resolution of the issues in question, (*see Quinn*, 783 F.2d at 817 n. 41; *Jhirad*, 536 F.2d at 484) denial of the discovery motion was proper.

As the extradition magistrate stated, "[t]he treaty by its language does not

4. Footnote 41 in *Quinn v. Robinson*, 783 F.2d at 817 states:

  Although there is no explicit statutory basis for ordering discovery in extradition hearings, *see Merino v. United States Marshal*, 326 F.2d 5, 12–13 (9th Cir.1963), the extradition magistrate has the right, under the court's "inherent power," *see First National City Bank of New York v. Aristeguieta*, 287 F.2d 219, 226 (2d Cir.1960), *vacated as moot*, 375 U.S. 49, 84 S.Ct. 144, 11 L.Ed.2d 106 (1963), to order such discovery procedures "as law and justice require," *Jhirad v. Ferrandina*, 536 F.2d at 484. In exercising discretion, the magistrate should consider both "the well-established rule that extradition proceedings are not to be converted into a dress rehearsal trial," *id.*, and whether the resolution of the contested issue would be appreciably advanced by the requested discovery, *id.* Although the accused is not entitled to introduce evidence that goes to his defense, "he may offer limited evidence to explain elements in the case against him". *Jimenez v. Aristeguieta*,

311 F.2d 547, 556 (5th Cir.1962). Needless to say, a habeas court can determine whether the magistrate's decision to deny discovery constituted an abuse of discretion that deprived the accused of due process. *See id.; Jhirad*, 536 F.2d at 484.

5. Article 6 of the United States–Thailand Extradition Treaty provides:

  When the offense for which extradition is sought is punishable by death under the laws of the requesting state and is not punishable by death under the laws of the Requested State, the *competent authority* of the Requested State may refuse extradition unless: (a) the offense is murder as defined under the laws of the Requested State; or (b) the competent authority of the Requesting State provides assurances that it will recommend to the pardoning authority of the Requesting State that the death penalty be commuted if it is imposed. *In the case of the United States of America, the competent authority is the Executive Authority.*
(Discovery Motion, Exh. A (emphasis added).)

place the question of the availability of the death penalty within the purview of the judiciary for determination of extraditability." (2/5/02 RT at 5.) It therefore followed that discovery was not appropriate in the proceeding before him. Accordingly, the extradition magistrate did not abuse his discretion, if any, in denying petitioner's Discovery Motion.[6] (*See* 2/5/02 RT at 4–7.) *See Lopez–Smith v. Hood*, 121 F.3d 1322, 1326 (9th Cir.1997) ("The magistrate judge properly excluded evidence addressing the exercise of discretion whether to extradite because the magistrate judge has no discretion.").

## C. Humanitarian Exception

Petitioner contends that the so-called "humanitarian exception" to the "rule of non-inquiry" should be applied to his case to prevent his extradition to Thailand because, if extradited, he will suffer the death penalty as punishment for his drug crimes. (Form Petition p. 3; Petition, pp. 12–13.)

The "humanitarian exception" would authorize an inquiry into the procedures or treatment an extraditee would encounter upon surrender where those procedures or punishment are "antipathetic to a federal court's sense of decency." *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir.), *cert. denied*, 364 U.S. 851, 81 S.Ct. 97, 5 L.Ed.2d 74 (1960).

█ This issue is not cognizable on habeas corpus. An extradition magistrate lacks discretion to inquire into the conditions that might await a fugitive upon return to the requesting country. *See Ahmad v. Wigen*, 910 F.2d 1063, 1066 (2d Cir.1990) ("A consideration of the procedures that will or may occur in the requesting country is not within the purview of a habeas corpus judge."); *see also Emami v. U.S. District Court*, 834 F.2d 1444, 1452–53 (9th Cir.1987) ("An extraditing court will generally not inquire into the procedures or treatment which await a surrendered fugitive in the requesting country.").

Although the dictum in *Gallina*—that a habeas corpus court may consider the procedures awaiting a fugitive upon extradition to the requesting country—has been widely quoted, including by the Ninth Circuit, it appears that no court has actually applied that decision as a basis for denying extradition.[7] *See, e.g., Mainero v. Gregg*, 164 F.3d 1199, 1210 (9th Cir.1999) (noting that "to date no court has ever denied extradition based on a fugitive's anticipated treatment in the requesting country"); *Lopez–Smith v. Hood*, 121 F.3d 1322, 1326–27 (9th Cir.1997) (discussing in dicta the possibility of the humanitarian exception); *Emami*, 834 F.2d at 1452–53 (noting that a humanitarian exception to extradition might someday be articulated by the

---

**6.** Petitioner's discovery motion also sought the requested information to establish that his extradition was sought for political purposes. (Discovery Motion, pp. 5–7.) He has not raised this issue in his Petition for Writ of Habeas Corpus. Therefore, the issue is deemed abandoned.

**7.** In *United States v. Linson*, 88 F.Supp.2d 1123 (D.Guam 2000), the district court suggested that it relied on the deplorable conditions in Philippine jails in deciding to deny extradition. *See id.* at 1128 ("The Court in this case also cannot totally ignore the Defense's assertion that the conditions in Philip-

pine jails can be oppressive."). Before this statement, however, the court had held that recantations which completely obliterated probable cause were admissible in the extradition proceeding, thereby precluding a finding of probable cause to extradite. *Id.* Thus, at most, the *Linson* discussion of the humanitarian exception is dictum. Moreover, it is unpersuasive dictum. The district court cited no authority for its statement, and failed to discuss the non-inquiry rule or any of the contrary holdings in the United States Supreme Court and Ninth Circuit, or even the *Gallina* case.

Ninth Circuit); *Arnbjornsdottir–Mendler v. United States,* 721 F.2d 679, 683 (9th Cir.1983) (same).

Even the Second Circuit, which decided *Gallina,* appears to have distanced itself from that opinion in more recent years. In fact, the Second Circuit has cited *Gallina* for the proposition that the State Department, and not the judiciary, properly inquires into procedures that await the fugitive in the requesting country. *See Ahmad,* 910 F.2d at 1066–67; *Sindona v. Grant,* 619 F.2d 167, 174–75 (2d Cir.1980); *see also Ntakirutimana v. Reno,* 184 F.3d 419, 430 (5th Cir.1999); *Martin v. Warden, Atlanta Pen.,* 993 F.2d 824, 830 n. 10 (11th Cir.1993); *Matter of Extradition of Cheung,* 968 F.Supp. 791, 799 (D.Conn. 1997); *Matter of Extradition of Sandhu,* 886 F.Supp. 318, 322 n. 5 (S.D.N.Y.1993).

Sound policy reasons support rejection of the *Gallina* dictum. The humanitarian exception would require courts to decide not only the legality of a particular extradition, but also the wisdom and virtue of it. Such rule would require extensive judicial exploration into the social conditions and legal system of a foreign country. This task is best left to the Secretary of State. *See United States v. Kin–Hong,* 110 F.3d 103, 110 (1st Cir.1997).

Finally, petitioner contends that his United States citizenship presents a more compelling case for application of the humanitarian exception. (Petition, p. 13.) However, United States citizenship does not bar extradition by the United States. *See Charlton v. Kelly,* 229 U.S. 447, 467, 33 S.Ct. 945, 952, 57 L.Ed. 1274 (1913); *Quinn v. Robinson,* 783 F.2d 776, 782 (9th Cir.1986). Again, the Department of State, not the district court, is best suited and uniquely empowered to determine the advisability of extradition under the particular circumstances of this case.

Accordingly, this Court on habeas review recommends that the petition for writ of habeas corpus be denied. Further, for the reasons set forth herein, this Court recommends that petitioner's April 3, 2003 request that this habeas court take judicial notice of a *Los Angeles Times* newspaper article about Thailand's war on drugs be denied.

## *RECOMMENDATION*

For all of the foregoing reasons, IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; and (2) directing that Judgment be entered denying the instant Petition for Writ of Habeas Corpus and dismissing the Petition with prejudice.

November 5, 2003.

## *NOTICE*

Reports and Recommendations are not appealable to the Court of Appeals, but may be subject to the right of any party to file Objections as provided in the Local Rules Governing the Dirties of the Magistrate Judges and review by the District Judge whose initials appear in the docket number. No Notice of Appeal pursuant to the Federal Rules of Appellate Procedure should be filed until entry of the Judgment of the District Court.