**Suwit PRASOPRAT, Petitioner**

v.

**Michael BENOV, Warden of the Metropolitan Detention Center, Respondent.**

**Case No. CV 06–2599–PA(RC).**

United States District Court, C.D. California.

May 25, 2009.

Barry O. Bernstein, Barry O. Bernstein Law Offices, Burbank, CA, Karyn H. Bucur, Karyn H. Bucur Law Offices, Laguna Hills, CA, for Petitioner.

Lisa A. Olson, U.S. Department of Justice, Washington, DC, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

PERCY ANDERSON, District Judge.

Pursuant to 28 U.S.C. Section 636, the Court has reviewed the petition and other papers along with the attached Report and Recommendation of United States Magistrate Judge Rosalyn M. Chapman, as well as petitioner's objections, and has made a *de novo* determination.

IT IS ORDERED that (1) the Report and Recommendation is approved and adopted; (2) the Report and Recommendation is adopted as the findings of fact and conclusions of law herein; (3) respondent's motion to dismiss is denied; and (4) the

petition for writ of habeas corpus is denied on the merits, and the action is dismissed with prejudice, and Judgment shall be entered accordingly.

IT IS FURTHER ORDERED that the Clerk shall serve copies of this Order, the Magistrate Judge's Report and Recommendation and Judgment by the United States mail on petitioner.

## REPORT AND RECOMMENDATION OF A UNITED STATES MAGISTRATE JUDGE

ROSALYN M. CHAPMAN, United States Magistrate Judge.

This Report and Recommendation is submitted to the Honorable Percy Anderson, United States District Judge, by Magistrate Judge Rosalyn M. Chapman, pursuant to the provisions of 28 U.S.C. § 636 and General Order 05–07 of the United States District Court for the Central District of California.

### BACKGROUND

### I

On April 28, 2006, petitioner Suwit Prasoprat filed his second habeas corpus petition under 28 U.S.C. § 2241 challenging his extradition to Thailand, and that petition is pending. The petitioner raises the following claims in his habeas petition: (1) "The Secretary of State has a mandatory duty not to Extradite someone who is likely to be tortured"; (2) Petitioner, "a U.S. citizen[,] will likely be tortured if he is extradited to Thailand"; and (3) "The Secretary's decision to extradite [petitioner] is arbitrary and capricious." On June 20, 2006, respondent answered the petition, and on August 3, 2006, respondent filed a motion to dismiss the petition. On September 22, 2006, petitioner filed a reply and an opposition to the motion to dismiss, and on October 13, 2006, respondent filed a response. On January 12, 2009, respondent filed a supplemental memorandum in support of his motion to dismiss, and on January 28, 2009, petitioner filed a response.

### II

The facts underlying petitioner's detention are:

In 1998, a confidential informant reported to an agent of the Drug Enforcement Administration ("DEA") that [petitioner Suwit] Prasoprat was involved in heroin trafficking between Bangkok, Thailand, and Los Angeles. The DEA monitored [petitioner] for several years and, in 2001, the United States filed a complaint in the United States District Court on behalf of the Government of the Kingdom of Thailand, seeking [petitioner's] extradition to Thailand pursuant to the extradition treaty between the United States and Thailand. The complaint alleged that [petitioner] and another individual were wanted in Thailand for drug offenses that are covered by the extradition treaty. [Petitioner] was ordered detained by a magistrate judge.

\* \* \*

Following an extradition hearing, the magistrate judge determined that the government had established probable cause to sustain the narcotics charges. The court therefore entered an extradition certification, ordering that [petitioner] was extraditable and certifying the matter to the United States Secretary of State to issue a warrant to extradite [petitioner].

*Prasoprat v. Benov,* 421 F.3d 1009, 1012–13 (9th Cir.2005) (footnote omitted), *cert. denied,* 546 U.S. 1171, 126 S.Ct. 1335, 164 L.Ed.2d 51 (2006).

The district court then stayed petitioner's "extradition pending the outcome of a petition for writ of habeas corpus[,] ... [and] [o]n December 23, 2002, petitioner

filed [his first] Petition for Writ of Habeas Corpus" challenging his extradition. *Prasoprat v. Benov*, 294 F.Supp.2d 1165, 1168 (C.D.Cal.2003). On November 25, 2003, the district court denied the habeas petition, *id.* at 1168–72, and petitioner appealed the judgment to the Ninth Circuit Court of Appeals, which affirmed the denial of the habeas petition. *Prasoprat*, 421 F.3d at 1014–17. In so doing, the Court of Appeals held that "the magistrate judge did not have the authority to refuse to issue a certificate of extradition on humanitarian grounds." *Id.* at 1016–17. The petitioner then sought certiorari from the United States Supreme Court, which denied his request on February 21, 2006. *Prasoprat v. Benov*, 546 U.S. 1171, 126 S.Ct. 1335, 164 L.Ed.2d 51 (2006).

Subsequently, on March 9, 2006, petitioner requested the Secretary of State deny his extradition to Thailand on humanitarian grounds, Petition, Exhs. B–C; however, on or about April 26, 2006, the Secretary of State authorized petitioner's extradition to Thailand and signed a surrender warrant. Petition, Exh. D.

## DISCUSSION

### III

### Motion to Dismiss

The petitioner's claims are based solely on the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("the CAT"). Specifically, petitioner claims the Secretary of State's decision to extradite him to Thailand is "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law because [petitioner] will face torture" in Thailand due to his "suspected ... drug crimes[,]" which would be "punishable in the United States by less than ten years." Petition at 5.

"The [CAT] was drafted by the United Nations in an effort to 'make [more] effective the struggle against torture and other cruel, inhuman or degrading treatment or punishment throughout the world.'" *Cornejo–Barreto v. Seifert*, 218 F.3d 1004, 1010 (9th Cir.2000) ("*Cornejo–Barreto I*") (citing CAT, Preamble). The CAT defines torture as:

> any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

CAT, Art. 1(1); *Cornejo–Barreto I*, 218 F.3d at 1010–11. Article 3 of the CAT "prohibits ratifying states from returning or extraditing individuals who are likely to face torture[,]" specifically stating that "[n]o State Party shall expel, return ('refouler') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." CAT, Art. 3(1); *Cornejo–Barreto I*, 218 F.3d at 1011. Furthermore, the CAT states that "[f]or the purpose of determining whether there are such grounds, the competent authorities shall take into account all relevant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights." CAT, Art. 3(2); *Cornejo–Barreto I*, 218 F.3d at 1011. On December 10, 1984, the United Nations General Assembly adopted the CAT, and the United States became a party to the CAT in November 1994. *Cornejo–Barreto I*, 218 F.3d at 1011. Thai-

land acceded to the CAT on October 2, 2007. *See* (http://treaties.un.org/Page s/ViewDetails.aspx?src=TREATY & id=129 & chapter=4 & lang=en (last visited March 24, 2009)).

"In 1998, Congress passed legislation implementing Article 3 of the Torture Convention as part of the Foreign Affairs Reform and Restructuring Act ('FARR Act') of 1998." *Cornejo–Barreto I,* 218 F.3d at 1011. This implementing legislation states that is "the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States." FARR Act § 2242(a) (codified at note following 8 U.S.C. § 1231); *Cornejo–Barreto I,* 218 F.3d at 1011. "The FARR Act requires that treaty implementation be carried out by 'the appropriate agencies,' in this case the Department of State, whose heads are directed to 'prescribe regulations to implement the obligations of the United States under Article 3' of the Torture Convention."[1] *Cornejo–Barreto I,* 218 F.3d at 1011 (quoting FARR Act, § 2242(b)).

The respondent contends the Secretary's extradition decisions are discretionary and not subject to judicial review

under the rule of non-inquiry, and neither the CAT nor the FARR Act provides for judicial review of these decisions. There is no merit to these contentions.

The rule of non-inquiry provides "that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state." *Prasoprat,* 421 F.3d at 1016; *Blaxland v. Commonwealth Dir. of Pub. Prosecutions,* 323 F.3d 1198, 1208 (9th Cir.2003). "The rule of non-inquiry is based on the principle that the Secretary of State's exercise of discretion regarding whether to extradite an individual may be based not only on 'considerations individual to the person facing extradition' but 'may be based on foreign policy considerations instead.'" *Prasoprat,* 421 F.3d at 1016 (quoting *Lopez–Smith v. Hood,* 121 F.3d 1322, 1326 (9th Cir.1997)); *see also United States v. Smyth,* 61 F.3d 711, 714 (9th Cir.1995) ("Undergirding [the non-inquiry] principle is the notion that courts are ill-equipped as institutions and ill-advised as a matter of separation of powers and foreign relations policy to make inquiries into and pronouncements about the workings of foreign countries' justice systems."), *cert. denied,* 518 U.S. 1022, 116 S.Ct. 2558, 135

---

1. In accordance with the FARR Act, the Department of State adopted regulations: (1) identifying the Secretary of State as "the U.S. official responsible for determining whether to surrender a fugitive to a foreign country by means of extradition[,]" 22 C.F.R. § 95.2(b); (2) providing that "to implement the obligation assumed by the United States pursuant to Article 3 of the Convention, the Department considers the question of whether a person facing extradition from the U.S. 'is more likely than not' to be tortured in the State requesting extradition" in making a decision to extradite, *id.*; (3) stating that "where allegations relating to torture are made or the issue is otherwise brought to the Depart-

ment's attention, appropriate policy and legal offices review and analyze information relevant to the case in preparing a recommendation to the Secretary as to whether or not to sign the surrender warrant" and, "[b]ased on the resulting analysis of relevant information, the Secretary may decide to surrender the fugitive to the requesting State, to deny surrender of the fugitive, or to surrender the fugitive subject to conditions[,]" 22 C.F.R. § 95.3(a-b); and (4) concluding that "[d]ecisions of the Secretary concerning surrender of fugitives for extradition are matters of executive discretion not subject to judicial review." 22 C.F.R. § 95.4.

L.Ed.2d 1076 (1996). Nevertheless, "in light of the legislation implementing the United Nations Convention against Torture, the rule of non-inquiry does not prevent an extraditee who fears torture upon surrender to the requesting government from petitioning for habeas corpus review of the Secretary of State's decision to extradite him." *Prasoprat*, 421 F.3d at 1016 n. 5 (citing *Cornejo–Barreto I*, 218 F.3d at 1009 n. 5, 1016–17); *see also Blaxland*, 323 F.3d at 1208 ("[P]otential abuses in the requesting country rising to the level of torture are reviewable by American courts[.]"). Indeed,

> [a]n extraditee ordered extradited by the Secretary of State who fears torture upon surrender ... may state a claim cognizable under the [Administrative Procedure Act] that the Secretary of State has breached her duty, imposed by the FARR Act, to implement Article 3 of the Torture Convention. Such a claim, brought in a petition for habeas corpus, becomes ripe as soon as the Secretary of State determines that the fugitive is to be surrendered to the requesting government.

*Cornejo–Barreto I*, 218 F.3d at 1016–17.[2] Thus, "a fugitive fearing torture may petition for review of the Secretary's decision to surrender him[,]" and "a habeas petition is the most appropriate form of action for fugitives seeking review of the Secretary's extradition decisions." *Id.* at 1014–16 (footnotes omitted); *Prasoprat*, 421 F.3d at 1016 n. 5.[3]

■ The respondent also contends that the Ninth Circuit's conclusion in *Cornejo–Barreto I* that the Secretary's extradition decisions may be subject to judicial review is merely non-binding dicta and, in any event, that conclusion is wrong; thus, respondent contends this Court should not consider *Cornejo–Barreto I*. Motion at 17–34, 38–40. That is not so. The Ninth Circuit, "sitting en banc, ... ha[s] held that a discussion in a published opinion from this court is binding circuit law 'regardless of whether it was in some technical sense "necessary" to [the] disposition of the case.'"[4] *United States v. Bond*, 552 F.3d 1092, 1096 (9th Cir.2009) (quoting *Barapind v. Enomoto*, 400 F.3d 744, 750–51 (9th Cir.2005) (en banc) (per curiam)); *see also In re Tippett*, 542 F.3d 684, 691–92 (9th Cir.2008) ("'[W]here a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit, regardless of whether doing so is necessary in some strict logical sense.'"

**2.** In *Cornejo–Barreto v. Siefert*, 379 F.3d 1075, 1082–83 (9th Cir.2004) (*"Cornejo–Barreto II"*), the Ninth Circuit held that this discussion in *Cornejo–Barreto I* was "an opinion advising what the law would be upon a hypothetical state of facts[,]" and was "advisory and thus, non-binding." (internal quotation marks and citation omitted). However, *Cornejo–Barreto II* was vacated as moot in *Cornejo–Barretto v. Siefert*, 389 F.3d 1307 (9th Cir. 2004); *see also Prasoprat*, 421 F.3d at 1012 n. 1 ("The holding in *Cornejo–Barreto I* was disapproved of by ... *Cornejo–Barreto II* .... The en banc court, however, later vacated *Cornejo–Barreto II* and denied the government's request to vacate *Cornejo–Barreto I*." (citations omitted)).

**3.** The Fourth Circuit Court of Appeals, however, reached the opposite conclusion in *Mironescu v. Costner*, 480 F.3d 664, 673–77 & n. 15 (4th Cir.2007), *cert. dismissed*, —— U.S. ——, 128 S.Ct. 976, 169 L.Ed.2d 799 (2008).

**4.** Moreover, as cited above, the Ninth Circuit in *Prasoprat* specifically cited *Cornejo–Barreto I* for the proposition that an individual who feared torture upon extradition could bring a petition for habeas corpus review of the Secretary of State's decision to extradite him. *See Prasoprat*, 421 F.3d at 1016 n. 5. This statement, as well as the Ninth Circuit's decision to vacate *Cornejo–Barreto II*, and not to vacate *Cornejo–Barreto I*, compel this Court to apply the Ninth Circuit's conclusion in *Cornejo–Barreto I*.

(citation omitted)). And this Court is not free to ignore Ninth Circuit precedent, *see Hart v. Massanari*, 266 F.3d 1155, 1170 (9th Cir.2001) ("A district judge may not respectfully (or disrespectfully) disagree with his learned colleagues on his own court of appeals who have ruled on a controlling legal issue, or with Supreme Court Justices writing for a majority of the Court."), even where another appellate court has reached a contrary conclusion. *See Zuniga v. United Can Co.*, 812 F.2d 443, 450 (9th Cir.1987) ("District courts are ... bound by the law of their own circuit, and 'are not to resolve splits between circuits no matter how egregiously in error they may feel their own circuit to be.' ") (quoting *Hasbrouck v. Texaco, Inc.*, 663 F.2d 930, 933 (9th Cir.1981), *cert. denied*, 459 U.S. 828, 103 S.Ct. 63, 74 L.Ed.2d 65 (1982)).

Respondent further argues that the Supreme Court's decision in *Munaf v. Geren*, —— U.S. ——, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008), overrules the Ninth Circuit's conclusion in *Cornejo–Barreto I*. Supp. Memo. at 4, 7–12. This Court disagrees. *Munaf* was not an extradition case, and the Supreme Court in *Munaf* specifically declined to consider the FARR Act's applicability in habeas corpus proceedings. *Munaf*, 128 S.Ct. at 2226–27 & n. 6. Therefore, "*Munaf* does not control here." *Khouzam v. Attorney Gen. of the United States*, 549 F.3d 235, 254 (3d Cir. 2008).

Finally, respondent contends the Ninth Circuit's conclusion in *Cornejo–Barreto I* has been superceded by the REAL ID Act of 2005, which "unambiguously provides

that jurisdiction over claims brought pursuant to the [CAT] exists *exclusively* in the court of appeals in connection with certain immigration proceedings." Supp. Memo. at 3–7. In particular, respondent claims Section 1252(a)(4), as amended by the REAL ID Act, governs this case. That is not so.

■ Section 1252(a)(4) provides:
Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment, except as provided in subsection (e) of this section.

8 U.S.C. § 1252(a)(4). However, Section 1252(a)(4) does not apply to extradition proceedings or habeas corpus proceedings challenging extradition.[5] *See, e.g., Flores–Torres v. Mukasey*, 548 F.3d 708, 711 (9th Cir.2008) (" '[T]he jurisdiction-stripping provision [of the REAL ID Act] does not apply to federal habeas corpus petitions that do not involve final orders of removal.' ") (quoting *Nadarajah v. Gonzales*, 443 F.3d 1069, 1075 (9th Cir.2006)); *Puri v. Gonzales*, 464 F.3d 1038, 1041 (9th Cir. 2006) ("[T]he REAL ID Act's jurisdiction-stripping provisions ... do[ ] not apply [if the] claim is not a direct challenge to an order of removal."). Rather, Section

---

**5.** The legislative history of the REAL ID Act makes this clear. *See* House Conference Report no. 109–72 at 176, 2005 U.S.C.C.A.N. 240, 301 (2005) ("Finally, it should be noted that section 106 [which modified Section 1252(a)(4) among other provisions] will not preclude habeas review over challenges to detention that are independent of challenges

to removal orders. Instead, the bill would eliminate habeas review only over challenges to removal orders."); *Boumediene v. Bush*, —— U.S. ——, 128 S.Ct. 2229, 2243–44, 171 L.Ed.2d 41 (2008) (Court of Appeals "was correct to take note of the legislative history when construing" the habeas-stripping provision of the Military Commissions Act).

1252(a)(4) applies only to orders of removal, *Iasu v. Smith*, 511 F.3d 881, 886 (9th Cir.2007); *Singh v. Gonzales*, 499 F.3d 969, 977 (9th Cir.2007), and habeas corpus petitions challenging such removal orders. *Khouzam*, 549 F.3d at 244–45; *see also Hamid v. Gonzales*, 417 F.3d 642, 647 (7th Cir.2005) (In the context of a petition challenging a removal order, "the Real ID Act ... abolishes habeas review of [CAT] claims, providing that a petition for review filed with the appropriate court of appeals is (with an irrelevant exception) 'the sole and exclusive means for judicial review of any cause or claim under the [CAT].' ").

Therefore, for the reasons discussed herein, this Court finds petitioner has set forth a cognizable claim challenging his extradition to Thailand on the ground he "fears torture" if returned to Thailand, *Prasoprat*, 421 F.3d at 1016 n. 5; *Cornejo–Barreto I*, 218 F.3d at 1014–17, and respondent's motion to dismiss should be denied. Nevertheless, to the extent petitioner claims the Secretary's decision is "arbitrary and capricious because [petitioner] ... is an American citizen," such a claim is not cognizable in these proceedings. *Lopez–Smith*, 121 F.3d at 1326.

## IV

## Merits

 To obtain relief under the CAT, petitioner must show it is more likely than not he will be tortured if returned to Thailand, *Barapind v. Reno*, 225 F.3d 1100, 1106 (9th Cir.2000); *Cornejo–Barreto*, 218 F.3d at 1011–15; *cf. Bromfield v. Mukasey*, 543 F.3d 1071, 1079 (9th Cir.2008) (To withhold removal under the CAT, petitioner has the burden of demonstrating it is more likely than not he will be tortured if removed from the United States.), so that the State Department's decision to extra-

dite him to Thailand was " 'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.' " *Cornejo–Barreto I*, 218 F.3d at 1015 (quoting 5 U.S.C. § 706(2)(a)). The petitioner has not met his burden.

Torture, as noted above, is "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as ... punishing him ... for an act he ... has committed ... or for any reason based on discrimination of any kind ... when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." CAT, Art. 1(1). "Acts constituting torture are varied, and include beatings and killings." *Bromfield*, 543 F.3d at 1079. "[T]o establish a likelihood of torture for purposes of the CAT, a petitioner must show that severe pain or suffering was specifically intended—that is, the actor intend the actual consequences of his conduct...." *Villegas v. Mukasey*, 523 F.3d 984, 989 (9th Cir.2008). However, "[t]orture does not include pain or suffering arising only from, inherent in or incidental to lawful sanctions[,]" including "judicially imposed sanctions and other enforcement actions authorized by law, including the death penalty...." 8 C.F.R. § 1208.18(a)(3).

Here, the meager evidence petitioner has compiled purporting to show "torture" consists largely of outdated media reports,[6] *see* Petition, Exh. B at 68–73, Exh. E, which simply do not demonstrate it is more likely than not petitioner will be tortured if extradited to Thailand. *See, e.g., Delgado v. Mukasey*, 546 F.3d 1017, 1026 (9th Cir.2008); *Dhital v. Mukasey*,

---

**6.** Some of the newspaper articles are over 10 years old, and even the most recent documents attached to petitioner's petition for writ

of certiorari to the Supreme Court are unauthenticated documents relating to events six years ago, during a prior Thai government.

532 F.3d 1044, 1051–52 (9th Cir.2008); *Arteaga v. Mukasey,* 511 F.3d 940, 948–49 (9th Cir.2007); *Nahrvani v. Gonzales,* 399 F.3d 1148, 1154 (9th Cir.2005). For instance, petitioner has attached a **1998** article in which a Thai interior minister publicly stated that "an execution order should be carried out right after it is passed by a court of law." Petition, Exh. E. However, this old article merely presents the opinion of one cabinet minister, and simply does not show immediate executions ever went into effect in Thailand, or any evidence of torture or other non-judicially imposed sanctions. In short, petitioner has not shown, as he must, that it is more likely than not that he will be tortured if returned to Thailand, so that the State Department's decision to extradite him to Thailand was "'arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.'" *Cornejo–Barreto I,* 218 F.3d at 1015. Therefore, the habeas corpus petition is without merit, and should be denied.

## RECOMMENDATION

IT IS RECOMMENDED that the Court issue an Order: (1) approving and adopting this Report and Recommendation; (2) adopting the Report and Recommendation as the findings of fact and conclusions of law herein; (3) denying respondent's motion to dismiss; and (4) denying the petition on the merits and dismissing the action with prejudice, and entering Judgment accordingly.