Franklin PEROFF, Appellant,

v.

I. G. HYLTON, United States Marshall, Griffin Bell, Attorney General, Cyrus Vance, Secretary of State, Appellees.

No. 77–1729.

United States Court of Appeals, Fourth Circuit.

Submitted Aug. 10, 1977.

Decided Sept. 14, 1977.

Philip J. Hirschkop, John D. Grad, Alexandria, Va., Aaron R. Fodiman, Arlington, Va., on brief for appellant.

Philip Wilens, Chief, Government Regulations & Labor Section, Murray R. Stein, Criminal Division, U.S. Department of Justice, Washington, D.C. for the appellees.

Before HAYNSWORTH, Chief Judge, and BUTZNER and RUSSELL, Circuit Judges.

PER CURIAM:

Challenging a finding by the district court that he is extraditable to stand trial in Sweden for violations of that country's criminal laws, Franklin Peroff sought habeas corpus relief below. He appealed from the denial of his petition and we affirmed. *Peroff v. Hylton,* 542 F.2d 1247 (4th Cir. 1976), *certiorari denied,* 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (January 17, 1977), rehearing denied, 429 U.S. 1124, 97 S.Ct. 1163, 51 L.Ed.2d 575 (February 22, 1977). By way of a new petition for habeas relief, Peroff now seeks to reopen the judicial inquiry into his extraditability and further contends that he was denied due process by the Secretary of State's execution and delivery of a warrant of surrender to Swedish authorities. On motion of the appellees, we dispense with oral argument and affirm the dismissal of Peroff's instant petition.

Peroff is charged with participation in a fraudulent scheme whereby relatively worthless shares of stock in a company called "American International Distributors, Inc.," represented to be stock of the "American International Development Corporation," were furnished as collateral for loans made to Peroff by Swedish citizens. The loans were not repaid. It was alleged that those defrauded were induced to make the loans in part because they had viewed either a brokerage firm's report or a newspaper's market summary showing that "A.I.D." was then being traded over-the-counter at a respectable price.

Peroff now asserts that the American International Development Corporation was no longer doing business under that name at the time of the alleged fraudulent transactions and had stopped trading as such over a month before the loans were made. This newly discovered evidence, he contends, supports his claim that the principal witness against him was in fact the perpetrator of the fraud and justifies a new inquiry into the question of whether probable cause exists to try Peroff for the offenses. We disagree. Although the facts now alleged by Peroff may tend to impeach the testimony of certain witnesses as to the specifics of the fraudulent transactions in question, it does not follow that he is entitled to a new hearing on the issue of extraditability. Even viewed in light of the appellant's new claims, the evidence proffered by the Swedish authorities in their request for Peroff's extradition amply supports the original finding of probable cause to believe that Peroff participated in the crimes charged.

Peroff also seeks a new hearing on the ground that his extradition was procured, in part, through misrepresentations by government officials that the extradition treaty between Sweden and The United States is reciprocal in nature. That Sweden's laws prohibit the extradition of her

**1102**

own citizens [1] is of no relevance to a magistrate's inquiry into extraditability under 18 U.S.C. § 3184. As we stated in *Peroff v. Hylton*, 542 F.2d 1247 (4th Cir. 1976), the purpose of an extradition hearing is to "inquire into the presence of probable cause to believe that there has been a violation of one or more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge of violation of its criminal laws." 542 F.2d at 1249. The hearing is "of the character of those preliminary examinations which take place . . . before a committing magistrate for the purpose of determining whether a case is made out which will justify the holding of the accused . . . to ultimately answer to an indictment." *Benson v. McMahon*, 127 U.S. 457, 463, 8 S.Ct. 1240, 1243, 32 L.Ed. 234 (1888). Even if the claimed lack of reciprocity were construed to be a violation of treaty obligations, it would be for the Executive alone to determine whether to waive such violations or to renounce the extradition agreement. *Charlton v. Kelly*, 229 U.S. 447, 33 S.Ct. 945, 57 L.Ed. 1274 (1913).

Peroff finally contends that he was denied due process by the Secretary of State's refusal to conduct a hearing prior to issuing the warrant of extradition to Swedish authorities. Under Article VII of the extradition treaty,

"There is no obligation upon the rerequested State to grant the extradition of a person who is a national of the requested State, but the executive authority of the requested State shall, subject to the appropriate laws of that State, have the power to surrender a national of that State if, in its discretion, it is deemed proper to do so." Article VII, Convention of Extradition Between The United States of America and Sweden, 14 U.S.T. 1849 (1963).

Characterizing the executive's exercise of discretion as an "administrative determination," Peroff argues that he is entitled to a "fair hearing" before the Secretary of State on the propriety of his extradition.[2] We disagree.

Although limited judicial review is available by way of a petition for habeas corpus relief, matters involving extradition have traditionally been entrusted to the broad discretion of the executive. A person facing interstate extradition has no constitutional right to notice or a hearing before the governor who acts upon the extradition request. *Marbles v. Creecy*, 215 U.S. 63, 30 S.Ct. 32, 54 L.Ed. 92 (1909). The need for flexibility in the exercise of Executive discretion is heightened in international extradition proceedings which necessarily implicate the foreign policy interests of the United States. Thus, while Congress has provided that extraditability shall be determined in the first instance by a judge or magistrate, 18 U.S.C. § 3184, the ultimate decision to extradite is "ordinarily a matter within the exclusive purview of the Executive." *Shapiro v. Secretary of State*, 162 U.S.App.D.C. 391, 395, 499 F.2d 527, 531 (1974).

Peroff has no statutory right to the hearing he seeks; indeed, agency actions involving "the conduct of . . . foreign affairs functions" are expressly exempted from the hearing requirements set out in The Administrative Procedure Act. 5 U.S.C. § 554(a)(4). In enacting legislation pertaining to international extradition and in approving the extradition treaty now in effect between The United States and Sweden, Congress has not sought to prescribe the procedures by which the Executive's

---

1. Under Article VII of the United States-Sweden Extradition Treaty, the executive authority of a requested state may, subject to the laws of that state, grant the extradition of a citizen. Swedish law proscribes the extradition of Swedish citizens. *Lag om utlämning for brott*, Art. 2 (Dec. 6, 1957).

2. Peroff does not argue that the Secretary of State's decision was arbitrary or based on constitutionally impermissible criteria, nor does he contend that the Executive refused to consider his objections to the extradition.

discretionary determination to extradite should be exercised. It would be manifestly improper for this Court to do so.

The appellant was afforded an extradition hearing below and the courts have twice entertained his petitions for habeas corpus relief. He has been accorded due process and must now answer to the charges lodged against him. The judgment of the district court is affirmed.