In the Matter of the EXTRADITION
OF Antonio MANZI.

UNITED STATES of America,
Petitioner, Appellee,

v.

Antonio MANZI, Respondent, Appellant.

No. 88–2128.

United States Court of Appeals,
First Circuit.

Heard April 4, 1989.
Decided Nov. 1, 1989.

John F. Moriarty, Jr., with whom Corneli-
us J. Moriarty, II, and Ducharme, Moriarty

& Wilson, Holyoke, Mass., were on brief, for respondent, appellant.

Mitchell D. Dembin, Asst. U.S. Atty., with whom Jeremiah T. O'Sullivan, U.S. Atty., Boston, Mass., was on brief, for the U.S.

Before BREYER and SELYA, Circuit Judges, and CAFFREY,* Senior District Judge.

PER CURIAM.

This case is an appeal from a denial of a petition for writ of habeas corpus which sought review of a magistrate's order for the extradition of the appellant, Antonio Manzi, to Italy. On February 11, 1985, the Republic of Italy filed a request for the extradition of Manzi, pursuant to the extradition treaty between the United States and Italy ("the Treaty").[1] The Italian government seeks the extradition of Manzi on convictions of armed robbery and receiving stolen property.[2] On May 18, 1988, U.S. Magistrate Michael A. Ponsor issued an Extradition Certificate and Order of Commitment certifying compliance with the Treaty and ordering U.S. authorities to surrender Manzi to Italian authorities. On July 18, 1988, Manzi filed a petition for writ of habeas corpus objecting to the magistrate's order. On August 31, 1988, Chief Judge Frank H. Freedman adopted all the findings of the magistrate, determined there was sufficient basis for extradition, and denied the petition for writ of habeas corpus. On October 5, 1988, Manzi appealed the district court's judgment, and now we affirm.

## I.

In examining habeas corpus petitions challenging extradition proceedings, the scope of inquiry is limited. *Romeo v.* *Roache,* 820 F.2d 540, 542 (1st Cir.1987); *Greci v. Birknes,* 527 F.2d 956, 958 (1st Cir.1976). Direct judicial review of extradition proceedings is not available, and habeas corpus review "is not a means for re-hearing what the magistrate already decided." *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925). *See Sabatier v. Dabrowski,* 586 F.2d 866, 868 (1st Cir.1978). This court may only examine "whether the magistrate had jurisdiction to consider the matter, whether the offense charged is within the treaty and by a somewhat liberal construction, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty." *Romeo,* 820 F.2d at 542–43 (quoting *Fernandez v. Phillips,* 268 U.S. 311, 312, 45 S.Ct. 541, 542, 69 L.Ed. 970 (1925)); *Brauch v. Raiche,* 618 F.2d 843, 847 (1st Cir.1980). In light of these standards, we shall review the appellant-Manzi's arguments on appeal.

## II.

The appellant-Manzi's numerous arguments on appeal can be analyzed in three general categories: (1) the magistrate denied him due process of law in the extradition proceedings; (2) the magistrate failed to comply with various provisions of the Treaty; and (3) the magistrate erred in finding that receiving stolen property was an extraditable offense under the Treaty. This court shall discuss each argument in turn.

### A. Due Process

The appellant-Manzi has raised a number of arguments claiming the magistrate denied him due process of law in the extradition proceeding. Specifically, Manzi objects to the magistrate's refusal to order the translation of an Italian appellate court

---

* Of the District of Massachusetts, sitting by designation.

1. Extradition Treaty between the United States of America and Italy, Oct. 13, 1983, U.S.–Italy, T.I.A.S. No. 10837.

2. Originally, the Italian government had also sought extradition of Manzi for charges of criminal association, extortion, one count of attempted murder, and two counts of murder for which he was convicted *in absentia.* As clarified in the briefs and on oral argument, however, the Italian government has withdrawn the warrants relating to criminal association, extortion, attempted murder, and murder. The warrants for armed robbery and receiving stolen property remain outstanding.

decision purportedly reversing Manzi's convictions in Italy and the translation of several Italian statutes which may provide credit for time served by Manzi in Massachusetts prison. Further, Manzi objects to the magistrate's refusal to allow the deposition of an INS agent who arrested an individual allegedly determined to kill the appellant in the United States. Finally, Manzi objects to the magistrate's refusal to hold an evidentiary hearing to decide the danger to Manzi's life from extradition to Italy.

In considering Manzi's claims, this court recognizes that serious due process concerns may merit review beyond the narrow scope of inquiry in extradition proceedings. *See Romeo,* 820 F.2d at 544 (court considered and rejected claim that due process required competency hearing in extradition proceeding); *Plaster v. United States,* 720 F.2d 340, 348–49 (4th Cir.1983) (court considered whether due process implicated when government attempted to extradite U.S. serviceman despite prior immunity agreement); *Matter of Burt,* 737 F.2d 1477, 1482–87 (7th Cir.1984) (court considered and rejected claims that considerable delay in extradition violated fifth amendment due process). *See also David v. Attorney Gen. of United States,* 699 F.2d 411, 415 (7th Cir.), *cert. denied,* 464 U.S. 832,, 104 S.Ct. 113, 78 L.Ed.2d 114 (1983); *Esposito v. Adams,* 700 F.Supp. 1470, 1471 (N.D.Ill.1988). In the instant case, however, the appellant's claims do not raise fundamental issues of substantive or procedural due process warranting our review.

■ First, Manzi has produced no factual evidence suggesting that the requested translations are even relevant to his case. As noted by the magistrate, the untranslated appellate decision does not name Manzi as a party, and Manzi has presented no other evidence that the case is binding on him. Furthermore, the appellate decision only concerns charges which the Italian government has subsequently withdrawn and which are no longer a basis for extradition. *See supra* note 2. Finally, the untranslated statutes concern issues of credit for time served in the United States, and thus only raise issues which should properly be placed before Italian authorities.

■ Second, Manzi's request for a deposition and an evidentiary hearing concerning his safety in returning to Italy runs afoul of the well-established rule of "noninquiry" in these matters. *See Quinn v. Robinson,* 783 F.2d 776, 789–90 (9th Cir.), *cert. denied,* 479 U.S. 882, 107 S.Ct. 271, 93 L.Ed.2d 247 (1986); *Eain v. Wilkes,* 641 F.2d 504, 516 (7th Cir.), *cert. denied,* 454 U.S. 894, 102 S.Ct. 390, 70 L.Ed.2d 208 (1981); *Escobedo v. United States,* 623 F.2d 1098, 1105 (5th Cir.), *cert. denied,* 449 U.S. 1036, 101 S.Ct. 612, 66 L.Ed.2d 497 (1980); *Sindona v. Grant,* 619 F.2d 167, 174–75 (2d Cir.1980); *Peroff v. Hylton,* 563 F.2d 1099, 1102 (4th Cir.1977) (per curiam); *Garcia–Guillern v. United States,* 450 F.2d 1189, 1192–93 (5th Cir.1971), *cert. denied,* 405 U.S. 989, 92 S.Ct. 1251, 31 L.Ed.2d 455 (1972); *Matter of Extradition of Pazienza,* 619 F.Supp. 611, 621 (S.D.N.Y.1985); *Matter of Extradition of Singh,* 123 F.R.D. 127, 129–40 (D.N.J.1987). Traditionally, federal courts have refused to consider questions relating to the procedures or treatment that might await an individual on extradition. *See Escobedo,* 623 F.2d at 1105; *Sindona,* 619 F.2d at 174–75; *Peroff,* 563 F.2d at 1102. Courts have chosen to defer these questions to the executive branch because of its exclusive power to conduct foreign affairs. *See Escobedo,* 623 F.2d at 1105; *Sindona,* 619 F.2d at 174; *Peroff,* 563 F.2d at 1102. Furthermore, courts have applied this rule where an individual facing extradition has questioned a foreign country's ability to provide adequate safety and protection. *See Sindona,* 619 F.2d at 174; *Peroff v. Hylton,* 542 F.2d 1247, 1249 (4th Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977). Given this well-established rule and Manzi's failure to produce any factual evidence of a threat to his safety, the magistrate acted properly in denying Manzi's request for a deposition and an evidentiary hearing.

### B. Compliance with Treaty

The appellant-Manzi has raised a number of technical objections regarding procedural compliance with the Treaty. Specifically, Manzi makes four claims: (1) the documents supporting extradition did not contain an adequate recital of procedures available to a person convicted *in absentia* pursuant to article X, section 5 of the Treaty; (2) an Italian magistrate did not sign the summary of facts underlying the Italian charges pursuant to article X, section 3(b) of the Treaty; (3) the receiving stolen property charge did not contain a description of the time of offense pursuant to article X, section 2(b); and (4) certain other documents were not signed by an Italian magistrate or judicial officer pursuant to article X, section 7(b). In this case, none of these technical objections raises a question within our scope of inquiry.

 This court's review of the proceedings below is limited to whether there is jurisdiction, whether the offense is within the Treaty, and whether evidence exists to support the magistrate's determination of probable cause. *See Romeo,* 820 F.2d at 542; *Brauch,* 618 F.2d at 847. All of these technical objections were heard by the magistrate and, after due consideration, were decided against the appellant. On habeas corpus review, the district court adopted the findings of the magistrate as to the technical objections. Accordingly, these issues are not subject to further review.

### C. Extraditability of Receiving Stolen Property Charge

 Finally, the appellant-Manzi questions whether the charge of receiving stolen property is properly an extraditable offense under the Treaty. Manzi argues that the Treaty requires that an extraditable offense, in this case receiving stolen property, be the same under both the laws of Italy and Massachusetts. Further, comparing the Massachusetts and Italian criminal codes, Manzi claims that the Massachusetts statute for receiving stolen property requires an element of scienter which is not present in the comparable Italian statute.

Thus, Manzi argues that the charge is different in both countries and nonextraditable under the Treaty. On a careful review of the applicable law in this case, Manzi's argument has no merit.

Article II, section 1 of the Treaty states:

> An offense, however denominated, shall be an extraditable offense only if it is punishable under the laws of both Contracting Parties by deprivation of liberty for a period of more than one year or by a more severe penalty.

This section of the Treaty imposes a requirement of "double criminality" on all extraditable offenses. *See Brauch,* 618 F.2d at 850–51 (interpreting similar provision in extradition treaty between United States and Great Britain). Under the Treaty, an extraditable offense must be a crime under the laws of both contracting countries. This requirement is "central to extradition law" and has been embodied in other United States extradition treaties. *See id.*

The Supreme Court has not interpreted this "double criminality" provision to require exact congruity of offenses. In *Collins v. Loisel,* 259 U.S. 309, 42 S.Ct. 469, 66 L.Ed. 956 (1922), the Court wrote:

> The law does not require that the name by which the crime is described in the two countries be the same; nor that the scope of liability shall be coextensive, or, in other respects, the same in the two countries. It is enough if the particular act charged is criminal in both jurisdictions.

259 U.S. at 312, 42 S.Ct. at 470. Further, this court has held that "double criminality" requires only "that the acts upon which the ... charges are based are proscribed by similar provisions of federal law, [state] law or the law of the preponderance of the states." *Brauch,* 618 F.2d at 851. *See Matter of Extradition of Russell,* 789 F.2d 801, 803–04 (9th Cir.1986) ("each element of the offense purportedly committed in a foreign country need not be identical to the elements of the similar offense in the United States."); *Demjanjuk v. Petrovsky,* 776 F.2d 571, 579–80 (6th Cir.1985), *cert. de-*

*nied,* 475 U.S. 1016, 106 S.Ct. 1198, 89 L.Ed.2d 312 (1986).

In this case, the acts which make up the charge against Manzi in Italy would clearly be criminal in Massachusetts. Manzi was charged and convicted of purchasing a stolen Mercedes automobile, replacing the identification numbers and license plates on the car, and selling the "clean" car for 3,600,000 lire. Furthermore, the Italian court convicted Manzi of "having acquired or in some way received a Mercedes Automobile ... *knowing of its unlawful provenance.*" These facts and findings would clearly satisfy the elements of receiving stolen property under Mass.Gen.L. ch. 266, § 60.[3] Given the facts of this case and the requirements of "dual criminality," the charge of receiving stolen property is clearly an extraditable offense under the Treaty.

In sum, the district court did not err in denying Manzi's petition for writ of habeas corpus challenging the magistrate's certification of extradition. The district court's judgment is hereby affirmed.

---

**3.** Chapter 266, section 60 of the Massachusetts General Laws provides, in pertinent part:

Whoever buys, receives or aids in the concealment of stolen or embezzled property, knowing *it to have been stolen or embezzled,* or whoever with intent to defraud buys, receives or aids in the concealment of property, knowing it to have been obtained from a person by a false pretense ... shall ... be punished for a first offense by imprisonment in jail or house of correction for not more than two and one half years, or by a fine of not more than two hundred fifty dollars....

Mass.Gen.L. ch. 266, § 60 (1986).