Ramiro CORNEJO–BARRETO, Petitioner–Appellant,

v.

W.H. SIEFERT, Warden of the Metropolitan Detention Center, Respondent–Appellee.

No. 02–56605.

United States Court of Appeals, Ninth Circuit.

Argued Oct. 10, 2003.

Submission Deferred Oct. 21, 2003.

Submitted Aug. 16, 2004.

Filed Aug. 16, 2004.

Craig Wilke, Deputy Federal Public Defender, Santa Ana, CA, for the petitioner-appellant.

Douglas Letter, U.S. Department of Justice, Civil Division, Washington, DC, for the respondent-appellee.

Before: WALLACE, RYMER, and TALLMAN, Circuit Judges.

RYMER, Circuit Judge:

This appeal involves a request by Mexico for extradition of Ramiro Cornejo–Barreto, a Mexican citizen and lawful permanent resident of the United States, and the question whether the decision by the Secretary of State to surrender him is subject to judicial review.

■ Extradition is a two-part process. First, a federal judicial officer determines whether the crime is extraditable and whether there is probable cause to sustain the charge. If so, the fugitive is certified as extraditable to the Secretary of State. 18 U.S.C. § 3184.[1] This decision is subject to limited judicial review through habeas corpus. *See Fernandez v. Phillips*, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925) (holding that habeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the extradition treaty, and whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty). In this case a magistrate judge determined that Cornejo–Barreto was extraditable, the district court denied habeas relief, and we affirmed in *Cornejo–Barreto v. Seifert* [sic], 218 F.3d 1004 (9th Cir.2000) (*Cornejo–Barreto I*). Next, the Secretary of State determines in his discretion whether

---

1. Section 3184 provides in pertinent part:

 Whenever there is a treaty or convention for extradition between the United States and any foreign government, ... any justice or judge of the United States, or any magistrate judge authorized so to do by a court of the United States, or any judge of a court of record of general jurisdiction of any State, may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, ... issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge, to the end that the evidence of criminality may be heard and considered.... If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, ... he shall certify the same, together with a copy of all the testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

the fugitive will be surrendered. 18 U.S.C. § 3186.[2] The Secretary decided to extradite Cornejo–Barreto.

Cornejo–Baretto again sought habeas relief because we said in *Cornejo–Barreto I* that the Administrative Procedures Act (APA), 5 U.S.C. §§ 701–06, allows an individual facing extradition who is making a torture claim to petition, under habeas corpus, for review of the Secretary's decision to surrender him. The district court ruled that it had jurisdiction under *Cornejo–Barreto I*, but found that the Secretary acted in accordance with the law in deciding to extradite Cornejo–Barreto.

We conclude that our discussion of APA review in *Cornejo–Barreto I* was not necessary because the issue of whether Cornejo–Barreto would be entitled to judicial review of a final extradition decision was not then before us. The Secretary had not yet decided to extradite Cornejo–Barreto and may never have decided to do so. For this reason the discussion is advisory and we are not bound by it. Considering the issue afresh, we hold that the Secretary of State's decisions concerning extradition are not subject to judicial review.

Accordingly, on different grounds, we affirm denial of the petition.

I

A warrant was issued by a judge in Tijuana, Mexico in August 1991 for Cornejo–Barreto's arrest on charges of violent robbery, homicide, injuries, deliberate property damage, kidnaping, and firing a weapon upon a person. The crimes allegedly occurred May 5, 1989. Cornejo–Barreto was accused of robbing a jewelry store in Tijuana using a submachine gun, shooting and killing a police officer while fleeing the robbery, and forcing a passerby

to drive him after he crashed his own car into a police car and injured an officer.

■ Cornejo–Barreto was provisionally arrested in the United States in October 1996 at the request of the Mexican government. A foreign state makes a request for extradition to the State Department, which determines if the request is within the terms of the applicable treaty before forwarding it to the Department of Justice for a similar screening. *See* RESTATEMENT (THIRD) OF FOREIGN RELATIONS LAW § 478 (1987); *Cornejo–Barreto I*, 218 F.3d at 1009–10. If covered by the treaty, the request is forwarded to the United States Attorney in the district where the fugitive is located. In this case, the United States Attorney for the Central District of California filed Mexico's formal request for extradition.

■ Under 18 U.S.C. § 3184, any justice or judge of the United States, including an authorized magistrate judge, has jurisdiction to conduct an extradition hearing according to the terms of the extradition treaty between a requesting nation and the United States. The hearing's purpose is to determine whether "(1) the crime is extraditable; and (2) there is probable cause to sustain the charge." *Cornejo–Barreto I*, 218 F.3d at 1009 (footnote omitted). If both requirements are met, the judge or magistrate must certify the individual as extraditable to the Secretary of State. *Id.;* 18 U.S.C. § 3184. In this case, hearings were held before a magistrate judge. Cornejo–Barreto argued that his extradition was barred by Article 3 of the United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment (Torture Convention), implemented

---

**2.** Section 3186 provides:
 The Secretary of State may order the person committed under sections 3184 or 3185

of this title to be delivered to any authorized agent of such foreign government, to be tried for the offense of which charged.

by the Foreign Affairs Reform and Restructuring Act of 1998, Pub.L. No. 105–277, § 2242, 112 Stat. 2681–822 (Oct. 21, 1998) (codified as Note to 8 U.S.C. § 1231) (FARR Act). Article 3 prohibits a country from surrendering an individual who will face torture in the requesting country.[3] Torture Convention, *entered into force* June 26, 1987, 1465 U.N.T.S. 85, G.A. Res. 39/46, 39 U.N. GAOR, 39th Sess., Supp. No. 51 at 197, U.N. Doc. A/RES/39/46 (signed by United States April 18, 1988). Cornejo–Barreto testified that he was tortured by Mexican authorities following his arrest, that he was forced to sign confessions to the charged crimes, and that he feared further torture if he were returned to Mexico. The magistrate judge held that evidence of future torture was inadmissible to show that certification should be denied, and certified Cornejo–Barreto for extradition in September 1997, finding that even without the confessions, there was probable cause that he committed the offenses for which Mexico sought his extradition.

■ While the certification decision may not be appealed directly, it may be reviewed collaterally. "On habeas, the district court's review has been limited to the following: (1) whether the extradition judge had jurisdiction to conduct the proceeding; (2) whether the extradition court had jurisdiction over the individual sought; (3) whether the extradition treaty was in force; (4) whether the crime fell within the treaty's terms; (5) whether there was probable cause that the individual sought committed the crime; and (6) whether the

crime was within the political offense exception." *Cornejo–Barreto I*, 218 F.3d at 1009–10 (citation omitted).

Cornejo–Barreto filed a petition for a writ of habeas corpus which was denied by the district court on October 8, 1998. On appeal, Cornejo–Barreto argued that the Torture Convention was self-executing and was thus enforceable by individuals such as himself. The Government countered that the FARR Act, which implemented the Torture Convention, and regulations that the State Department adopted pursuant to it, prohibit judicial review of Torture Convention claims in the context of extradition. This court affirmed denial of the petition because Cornejo–Barreto's torture claim was not ripe, but directed that it be without prejudice to the filing of a new petition should the Secretary decide to surrender Cornejo–Barreto. In such event, we held that Cornejo–Barreto could state a claim cognizable under the APA that the Secretary breached his duty to implement Article 3. *Id.* at 1016–17.

*Cornejo–Barreto I* reasoned that Article 3 of the Torture Convention prohibits extradition of a fugitive if there are substantial grounds for believing that he would be in danger of being subjected to torture,[4] and that a duty not to extradite in such circumstances was imposed by Congress on the Secretary of State through § 2242(a) of the FARR Act. Section 2242(a) states that it is "the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are

---

**3.** Article 3 provides:

1. No State Party shall expel, return ("refouler") or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture.

2. For the purpose of determining whether there are such grounds, the competent authorities shall take into account all rele-

vant considerations including, where applicable, the existence in the State concerned of a consistent pattern of gross, flagrant or mass violations of human rights.

**4.** We recognized that the likelihood of torture on return is irrelevant to the probable cause determination. 218 F.3d at 1008 n. 3.

substantial grounds for believing the person would be in danger of being subjected to torture." FARR Act, § 2242(a). The Act requires agencies such as the Department of State to prescribe regulations to implement the obligations of the United States under Article 3. *Id.* § 2242(b). Regulations adopted by the State Department provide that "the Department considers the question of whether a person facing extradition from the U.S. 'is more likely than not' to be tortured in the State requesting extradition," 22 C.F.R. § 95.2(b), and that "[b]ased on the resulting analysis of relevant information, the Secretary may decide to surrender the fugitive to the requesting State, to deny surrender of the fugitive, or to surrender the fugitive subject to conditions." *Id.* § 95.3(b). The opinion states that the FARR Act imposes a "clear and nondiscretionary duty" to assure that those subject to the Secretary's actions are not to be returned if they are likely to face torture, therefore APA review is authorized. As neither the FARR Act nor the APA grants jurisdiction to the federal courts for claims arising under Article 3 of the Torture Convention, *Cornejo–Barreto I* concludes that a habeas petition is the most appropriate form of action for fugitives seeking review of the Secretary's extradition decisions. However, any such challenge would not be ripe until there is final agency action, that is, until the Secretary has decided to surrender a fugitive. *Cornejo–Barreto I,* 218 F.3d at 1016.

Judge Kozinski concurred in the judgment, but declined to join the analysis of the applicability of the APA, noting that "the question of whether petitioner would be entitled to judicial review of an extradition decision by the Secretary of State is not before us." *Id.* at 1017 (Kozinski, J., concurring). He would have held "only that the district court does not have jurisdiction to review petitioner's claim under the Torture Convention, because the

FARR Act does not authorize judicial enforcement of the Convention, and the Convention is not self-executing." *Id.* (citation omitted).

Once denial of Cornejo–Barreto's habeas petition had been affirmed, the magistrate judge's certification along with a copy of all the testimony was transmitted to the Secretary of State for the Secretary to exercise his discretion whether to extradite. *See* 18 U.S.C. § 3184. In this case, Cornejo–Barreto also submitted various State Department reports on human rights practices in Mexico for the Secretary's consideration. In June 2001, the Secretary signed a warrant of extradition ordering that Cornejo–Barreto be returned to Mexico. The government delayed extradition in light of the opinion in *Cornejo–Barreto I* to give Cornejo–Barreto an opportunity to seek judicial review of the Secretary's decision.

Cornejo–Barreto then filed a second § 2241 petition, again raising the claim that his extradition would offend the Torture Convention. The government did not submit a full administrative record because of its intent to challenge jurisdiction and because of foreign policy confidentiality concerns. However, it did provide the declaration of Samuel M. Witten, Assistant Legal Adviser for Law Enforcement and Intelligence in the Office of Legal Adviser of the U.S. State Department, who is in charge of extraditions. The Witten declaration describes the process through which the Department goes in deciding whether to surrender a fugitive, or to condition extradition on the requesting state's provision of assurances related to torture or other aspects of the requesting state's criminal justice system. It indicates that the Department's ability to seek and obtain assurances from a requesting state depends in part on the ability to treat dealings with foreign governments with

discretion, and that a judicial decision overturning a determination made by the Secretary after negotiations with a requesting state could seriously undermine this country's foreign relations and cause delays that would undermine expeditious surrendering of fugitives for trial in requesting states and in turn, in the United States.

The district court held that it had jurisdiction given *Cornejo–Barreto I.* On the merits, the court found that the Witten declaration was uncontradicted, that Cornejo–Barreto failed to show that the Secretary did not comply with Article 3 of the Torture Convention by reviewing all relevant considerations before signing the extradition warrant, and that the Secretary did not fail to act in accordance with law under 5 U.S.C. § 706(1)(A). It denied the petition, but stayed the warrant pending Cornejo–Barreto's appeal to this court.

## II

■ To resolve Cornejo–Barreto's appeal we must first decide whether *Cornejo–Barreto I's* discussion of judicial review is binding. Our colleagues have occasionally disagreed over how "dicta" should be defined. *See, e.g., United States v. Johnson*, 256 F.3d 895 (9th Cir.2001) (en banc); *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003) (en banc). Some subscribe to the view that a court's pronouncement is dicta when it "is unnecessary to our disposition of the case," *see Johnson*, 256 F.3d at 920 (Tashima, J., concurring); *Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1472 (9th Cir.1995), others to the view that "where a panel confronts an issue germane to the eventual resolution of the case, and resolves it after reasoned consideration in a published opinion, that ruling becomes the law of the circuit," *see Johnson*, 256 F.3d at 914 (Kozinski, J., concurring); *Miranda B. v. Kitzhaber*, 328 F.3d 1181, 1186 (9th Cir.2003) (per curiam); *Brand X Internet Services v. FCC*, 345 F.3d 1120, 1130

(9th Cir.2003). Regardless of which view controls, the conclusion in *Cornejo–Barreto I* that the Secretary's extradition decisions are subject to judicial review under the APA cannot be binding.

Neither the issue of judicial review of the Secretary's determination, nor the applicability of the APA, was briefed or argued by the parties in *Cornejo–Barreto I.* The Secretary had not yet had an opportunity to decide whether to extradite Cornejo–Barreto, so any discussion regarding possible future review, or the application of the APA, was hypothetical. By the same token, it was not necessary to resolve the issue in *Cornejo–Barreto I* because the only question before the court at that time was whether judicial review was available for a Torture Convention claim at the certification stage. Once it was recognized that the likelihood of future torture is not part of the certification decision, the Torture Convention claim was necessarily unripe. Even so, the certifying court either had—or lacked—jurisdiction to consider a claim arising under the Torture Convention depending upon whether the Torture Convention is self-executing and the FARR Act authorizes judicial enforcement. This, too, would have been dispositive one way or the other on the claim in *Cornejo–Barreto I,* without the need to consider whether the Secretary's subsequent decision, if to extradite, would be subject to judicial review. Either way, the discussion in *Cornejo–Barreto I* about judicial review of the Secretary's decision was "an opinion advising what the law would be upon a hypothetical state of facts." *North Carolina v. Rice*, 404 U.S. 244, 246, 92 S.Ct. 402, 30 L.Ed.2d 413 (1971). As such, it is advisory and thus, non-binding.

We realize that the *Cornejo–Barreto I* opinion states that the court would have been required to reach the merits if APA review of the Secretary's final decision

were not available, and that it describes its discussion as a holding. 218 F.3d at 1007 n. 2, 1014–15, 1016–17. However, this makes its discussion no more pertinent to the issues presented, nor any less premature. No final action had been taken, and none might ever be from which judicial review was sought. The panel affirmed denial of the petition because Cornejo–Barreto's torture claim did not become ripe until the Secretary of State determined that he was to be surrendered to Mexico, and acknowledged that the merits of the claim could not be reached at that time. Id. at 1016–17. In these circumstances we cannot but conclude that the discussion of what should happen—if and when the Secretary decided to surrender Cornejo–Barreto—is not the law of the circuit by which this panel is bound.

■ Cornejo–Barreto points out that the court has since referred to Cornejo–Barreto I as holding that certain decisions by the Secretary of State determining to extradite a fugitive are reviewable. See, e.g., Barapind v. Reno, 225 F.3d 1100, 1106 (9th Cir.2000); see also Blaxland v. Commonwealth Dir. of Pub. Prosecutions, 323 F.3d 1198, 1208 (9th Cir.2003) (citing Barapind). However, the reference in both cases was in passing; neither opinion turns on Cornejo–Barreto I and nothing in either opinion suggests that the parties focused attention on the binding effect of Cornejo–Barreto I, as they have here. Cornejo–Barreto also contends that the holding from Cornejo–Barreto I is binding under the "law of the case" doctrine. "The law of the case doctrine provides that 'the decision of an appellate court on a legal issue must be followed in all subsequent proceedings in the same case.' " Bernhardt v. Los Angeles County, 339 F.3d 920, 924 (9th Cir.2003) (quoting In re Rainbow Magazine, Inc., 77 F.3d 278, 281 (9th Cir. 1996)). As this is not the same action, Cornejo–Barreto I is not binding as the law of the case even though it would be

binding as law of the circuit if it were not advisory.

Because we conclude that Cornejo–Barreto I is advisory and thus not the law of the circuit, we turn to whether the Secretary's extradition decision is subject to judicial review.

## III

■ The government's position is that extradition decisions by the Secretary of State are discretionary and are not subject to judicial review under the "Rule of Non–Inquiry." The principle is that the procedures or treatment that await a surrendered fugitive in the requesting country are determined solely by the executive branch. See, e.g., Arnbjornsdottir–Mendler v. United States, 721 F.2d 679, 683 (9th Cir.1983). Whereas the magistrate judge's decision to certify a person for extradition is subject to limited judicial review through habeas corpus, the government argues that the Secretary's decision to surrender a fugitive is ultimately a foreign policy decision that is reposed entirely in the executive branch. This is because the decision to surrender, unlike the probable cause determination that a judicial officer makes, involves sensitive foreign-policy judgments about how the fugitive is likely to be treated if returned to the requesting country; whether to seek assurances about the protections that will be afforded to him, at what level to obtain them, and how to evaluate such assurances as are given; and the nature of diplomatic relations between the United States and the requesting foreign state at the time. The government submits that the passage of the FARR Act changed none of this, because nothing in the Act indicates that Congress intended to rewrite extradition law and make the Secretary's extradition determinations subject to judicial review. To the contrary, the Act explicitly states

that it shall not be construed as providing jurisdiction to consider or review claims raised under the Torture Convention or the Act, or determinations made with respect to the policy against returning fugitives when there is a danger of torture, except for review of final orders in immigration cases. FARR Act § 2242(d).

Cornejo–Barreto counters that the FARR Act supersedes the "Rule of Non–Inquiry" and case law applying it. He contends that the text of the Act imposes a mandatory duty on the Secretary not to extradite a person who is likely to be tortured, and that to construe it as affording discretion to do so would undermine Congressional intent and violate international law. Further, he argues that the APA allows review because the FARR Act does not preclude judicial review of the Secretary's application of the Act to a particular case, and the "agency discretion" exception in 5 U.S.C. § 701(a)(2) does not apply if there is a meaningful standard against which to judge the agency's exercise of discretion. See Heckler v. Chaney, 470 U.S. 821, 830, 105 S.Ct. 1649, 84 L.Ed.2d 714 (1985). There is such a standard here on account of the mandatory, non-discretionary duty not to extradite a person who is likely to be tortured. Cornejo–Barreto also maintains that we owe the Secretary's interpretation no deference as his interpretation is contrary to clear Congressional intent. Finally, in his view, habeas corpus is available because

§ 2242(d) of the FARR Act does not eliminate habeas jurisdiction for APA review. Cornejo–Barreto points out that in the context of immigration removal proceedings, we have held that federal courts have habeas jurisdiction pursuant to 28 U.S.C. § 2241 to consider claims by aliens that their removal to a foreign country violates the Torture Convention, see Singh v. Ashcroft, 351 F.3d 435, 440–42 (9th Cir.2003), and he urges us to extend this reasoning to extradition.

■ We have long adhered to the general "Rule of Non–Inquiry" that it is the role of the Secretary of State, not the courts, to determine whether extradition should be denied on humanitarian grounds or on account of the treatment that the fugitive is likely to receive upon his return to the requesting state. See Barapind, 225 F.3d at 1105–06 (noting acceptance of the general rule). Other courts have as well.[5] "Undergirding this principle is the notion that courts are ill-equipped as institutions and ill-advised as a matter of separation of powers and foreign relations policy to make inquiries into and pronouncements about the workings of foreign countries' justice systems. The State Department is in a superior position to consider the consequences of a nonextradition decision upon foreign relations than the courts and it has diplomatic tools, not available to the judiciary, which it can use to insure that the requesting

5. See, e.g., United States v. Kin–Hong, 110 F.3d 103, 110 (1st Cir.1997) ("The rule of non-inquiry, like extradition procedures generally, is shaped by concerns about institutional competence and by notions of separation of powers."); Ahmad v. Wigen, 910 F.2d 1063, 1067 (2d Cir.1990) ("The interests of international comity are ill-served by requiring a foreign nation ... to satisfy a United States district judge concerning the fairness of its laws and the manner in which they are enforced."); Sidali v. INS, 107 F.3d 191, 195 n. 7 (3d Cir.1997) ("[I]t is the function of the

Secretary of State—not the courts—to determine whether extradition should be denied on humanitarian grounds."); Peroff v. Hylton, 563 F.2d 1099, 1101–03 (4th Cir.1977) (declining review of due process challenge to Secretary of State's execution of warrant of surrender); Escobedo v. United States, 623 F.2d 1098, 1107 (5th Cir.1980) ("[T]he degree of risk to (Escobedo's) life from extradition is an issue that properly falls within the exclusive purview of the executive branch.") (citations and quotations omitted).

state provides a fair trial.' " *United States v. Smyth*, 61 F.3d 711, 714 (9th Cir.1995) (quoting Michael P. Scharf, *Foreign Courts on Trial: Why U.S. Courts Should Avoid Applying the Inquiry Provision of the Supplementary U.S.-U.K. Extradition Treaty*, 25 STAN. J. INT'L L. 257, 269 (1988)).

*Lopez–Smith v. Hood*, 121 F.3d 1322 (9th Cir.1997), is the leading case applying the rule in our circuit. In that case, Mexico sought extradition of Lopez–Smith for murder. The fugitive petitioned for habeas relief after the magistrate judge certified that he was extradictable, in part on the ground that he would be subject to corruption instead of due process upon his return. The magistrate judge excluded the evidence as irrelevant. In affirming, we recognized that "[e]xtradition is a matter of foreign policy entirely within the discretion of the executive branch, except to the extent that the statute interposes a judicial function." *Id.* at 1326. Section 3184 provides for a court to issue a certificate if extradition is permissible, and for the Secretary of State to exercise his discretion whether to extradite. As we explained:

> The Secretary's exercise of discretion need not be based upon considerations individual to the person facing extradition. It may be based on foreign policy considerations instead. "The Secretary of State may exercise executive discretion based on technical, humanitarian, or political grounds." We suppose there is nothing to stop Lopez–Smith's lawyer from putting together a presentation showing why the Secretary ought to exercise discretion not to extradite Lopez–Smith, and mailing it to the Secretary of State. As for whether the Secretary of State considers the material, and how the Secretary balances the material against other considerations, that is a matter exclusively within the discretion

of the executive branch and not subject to judicial review.

*Id.* at 1326 (citation omitted) (quoting M. C HERIF BASSIOUNI, INTERNATIONAL EXTRADITION:UNITED STATES LAW AND PRACTICE 768 (3d ed.1996)). We declined to retreat from the Rule of Non–Inquiry in response to Lopez–Smith's argument that "procedures or punishment so antipathetic to a federal court's sense of decency" should cause us to, because "courts in this country refrain from examining the penal systems of requesting nations, leaving to the Secretary of State determinations of whether the defendant is likely to be treated humanely." *Id.* at 1326–27 (citing *Arnbjornsdottir–Mendler*, 721 F.2d at 683, and Bassiouni, *supra*, at 486–92).

 The Rule of Non–Inquiry reflects both the bifurcated process in the statute, and the differentiation of function that the statute recognizes. As the First Circuit described the structure:

> Thus, under 18 U.S.C. § 3184, the judicial officer's inquiry is limited to a narrow set of issues concerning the existence of a treaty, the offense charged, and the quantum of evidence offered. The larger assessment of extradition and its consequences is committed to the Secretary of State. This bifurcated procedure reflects the fact that extradition proceedings contain legal issues peculiarly suited for judicial resolution, such as questions of the standard of proof, competence of evidence, and treaty construction, yet simultaneously implicate questions of foreign policy, which are better answered by the executive branch. Both institutional competence rationales and our constitutional structure, which places primary responsibility for foreign affairs in the executive branch, *see, e.g., United States v. Curtiss–Wright Export Corp.*, 299 U.S. 304,

319–22, 57 S.Ct. 216, 81 L.Ed. 255 ... (1936), support this division of labor. *United States v. Kin–Hong,* 110 F.3d 103, 110 (1st Cir.1997). It is also the case, as we have previously recognized, that only the State Department, not the judiciary, has the power to attach conditions to an order of an extradition. *See Emami v. United States District Court,* 834 F.2d 1444, 1453 (9th Cir.1987). And, of course, only the Secretary of State has diplomatic tools at his disposal for assuring that a fugitive is treated humanely upon being returned.

 Thus, the Rule of Non–Inquiry is well-established, rooted in the separation of powers, and consistent with the procedures that Congress adopted for extradition. The question is whether it has been displaced by the Torture Convention or the FARR Act. We think it has not been.

The FARR Act on its face clearly states that it does not create jurisdiction for a court to review the Secretary's application of Article 3 of the Torture Convention. Section 2242(d) states:

> Notwithstanding any other provision of law, and except as provided in the regulations described in subsection (b), no court shall have jurisdiction to review the regulations adopted to implement this section, *and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention or this section, or any other determination made with respect to the application of the policy set forth in subsection (a),* except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act (8 U.S.C. 1252).

FARR Act § 2242(d) (emphasis added). The regulations authorized by the FARR Act likewise provide that "nothing in section 2242 shall be construed as providing any court jurisdiction to consider or review

claims raised under the Convention or section 2242, or any other determination made with respect to the application of the policy set forth in section 2242(a)." 22 C.F.R. § 95.4. While § 2242(d) plainly contemplates judicial review of final orders of removal for compliance with the Torture Convention and the FARR Act, it just as plainly does not contemplate judicial review for anything else. Otherwise, the "except" clause would be superfluous. Consequently, it is manifest that the FARR Act itself precludes jurisdiction to review determinations made with respect to the policy set out in subsection (a) of not returning fugitives who would be in danger of being subjected to torture.

 Nor does the Torture Convention itself enable review of such determinations because the treaty is not self-executing. *See Saint Fort v. Ashcroft,* 329 F.3d 191, 202 (1st Cir.2003) (so holding); *Wang v. Ashcroft,* 320 F.3d 130, 140 (2d Cir.2003) (same). The Convention does not provide for private rights, and the conclusion that it is not self-executing is supported by the fact that the United States Senate expressly declared that Article 3 was not self-executing when it consented to ratification. The Declaration states "that the provisions of Articles 1 through 16 of the Convention are not self-executing." 136 Cong. Rec. S17486–01, S17491–92 (Oct. 27, 1990); S. EXEC. REP. 101–30, at 31 (1990). The implementing regulations for the FARR Act are subject to these declarations, 8 U.S.C. § 1231 note, Pub.L. 105–277 § 2242(b). The Senate Report regarding the Torture Convention, to which the Resolution of Ratification was appended, also included the Executive's analysis that the term "competent authorities" in Article 3 "appropriately refers in the United States to the competent administrative authorities who make the determination whether to extradite, expel, or return...."

Because the Convention is not self-executing, the determinations of these authorities will not be subject to judicial review in domestic courts." S. EXEC. REP. 101–30, at 17–18. A treaty that is not self-executing confers no judicially enforceable rights upon a private party. *Whitney v. Robertson,* 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888) (holding that if a treaty's stipulations are not self-executing they can be enforced only pursuant to legislation to carry them into effect); *Islamic Republic of Iran v. Boeing Co.,* 771 F.2d 1279, 1283 (9th Cir.1985) (indicating that a non-self-executing agreement is merely an agreement between nations with no effect on domestic law absent additional governmental action). As the FARR Act confers no such rights with respect to extradition, and precludes review of the Secretary's determinations with respect to its policy against return of persons in danger of torture, it is evident that the Torture Convention's provisions do not create any judicially enforceable rights in the context of extradition.

This leaves us where we were before the Torture Convention and the FARR Act. The Rule of Non–Inquiry still comports with the statutory scheme for extradition, as well as the doctrine of separation of powers that animates it. Congress made no changes in § 3184 when the FARR Act was enacted, so the statutory scheme remains the same. Neither did the FARR Act work any change in institutional competence. Now as it was before, "[i]t is not that questions about what awaits the relator in the requesting country are irrelevant to extradition; it is that there is another branch of government, which has both final say and greater discretion in these proceedings, to whom these questions are more properly addressed." *Kin–Hong,* 110 F.3d at 111.

We see nothing in the FARR Act that suggests that Congress somehow impliedly intended to alter the balance struck by § 3184 and the Rule of Non–Inquiry. As we have explained, it seems clear that Congress did *not* intend for the Convention or the FARR Act to affect review of the Secretary's determination in extradition cases applying the policy against returning fugitives to a requesting country where there is a danger of being subjected to torture. *See* Bernard H. Oxman & Jacques Semmelman, *International Decision: Cornejo–Barreto v. Seifert,* 95 AM. J. INT'L L. 435, 438 (2001). As there has never been judicial review of the Secretary's determinations, and neither the Torture Convention nor the FARR Act allows it, we decline to create it.

■ The APA does not afford an alternate basis for judicial review of the Secretary's decision to extradite. It explicitly states that "[n]othing herein ... affects other limitations on judicial review or the power or duty of the court to dismiss any action or deny relief on any other appropriate legal or equitable ground...." 5 U.S.C. § 702(1). This would include the FARR Act's limitation on judicial review, as well as the traditional restraint in the Rule of Non–Inquiry. The APA also expressly excepts decisions that involve "agency action ... committed to agency discretion by law." *Id.* at 701(a)(2); *see Lincoln v. Vigil,* 508 U.S. 182, 191–92, 113 S.Ct. 2024, 124 L.Ed.2d 101 (1993) (declining to review agency decision traditionally committed to agency discretion); *Webster v. Doe,* 486 U.S. 592, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988); *Heckler,* 470 U.S. at 830, 105 S.Ct. 1649. Here, the decision whether or not to extradite is within the Secretary's discretion. The extradition statute says so: "The Secretary of State *may* order the person committed under section[ ] 3184 ... of this title to be delivered to any authorized agent of such foreign government ...." 18 U.S.C. § 3186 (emphasis added). And, as we have ex-

plained, case law has long been to the same effect.

■ Although § 701(a)(2) precludes review only "if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion," *Heckler*, 470 U.S. at 830, 105 S.Ct. 1649, the FARR Act offers no meaningful standard in the context of extradition. It simply articulates a *policy*. A policy represents neither a standard nor a rule. More importantly, the Act does not take away the Secretary's discretion to surrender a fugitive, to decline to surrender him, or to condition surrender. As courts and commentators have long recognized, the Secretary's decision may be informed or influenced by foreign policy considerations as well as humanitarian concerns. *See, e.g., Jimenez v. United States District Court*, 84 S.Ct. 14, 19, 11 L.Ed.2d 30 (1963) (Goldberg, J., chambers opinion) (describing commitments made by the Venezuelan government to the State Department as a condition of surrender); *Lopez–Smith*, 121 F.3d at 1326 (noting that the Secretary's exercise of discretion may be based on foreign policy considerations rather than considerations individual to the person facing extradition); *Kin–Hong*, 110 F.3d at 109–10; M. CHERIF BASSIOUNI, INTERNATIONAL EXTRADITION: UNITED STATES LAW AND PRACTICE 893–96 (4th ed. 2002) ("The Secretary of State may exercise executive discretion based on technical, humanitarian, or political grounds."); 4 MICHAEL ABBELL & BRUNO A. RISTAU, INTERNATIONAL JUDICIAL ASSISTANCE: CRIMINAL—EXTRADITION § 13–3–8(2), (3) at 269–73 (1995) (discussing the numerous discretionary reasons to grant or refuse extradition); Jacques Semmelman, *Federal Courts, The Constitution, and the Rule of Non–Inquiry in International Extradition Proceedings*, 76 Cornell L.Rev. 1198, 1229–30 (1991) ("Unlike

the courts, however, the Secretary of State is able to safeguard the defendant's rights without jeopardizing any foreign policy interests of the United States."). Even were considerations individual to the person facing extradition amenable to judicial review, foreign policy considerations are not. Accordingly, we conclude that the APA does not provide a basis for authorizing judicial review of the Secretary's decision to extradite.

■ Likewise, habeas jurisdiction affords no basis for judicial review of the Secretary's decision to extradite that is otherwise within the Rule of Non–Inquiry. The courts' habeas review in extradition cases is limited, and generally does not extend to how the fugitive will be treated in the judicial or penal system of the requesting state. *See, e.g., Lopez–Smith*, 121 F.3d at 1326–27; *Kin–Hong*, 110 F.3d at 110–11; *Ahmad v. Wigen*, 910 F.2d 1063, 1066–67 (2d Cir.1990); *cf. Arnbjornsdottir–Mendler*, 721 F.2d at 683 (recognizing possible exception where procedures or punishment are "antipathetic to a federal court's sense of decency" from *Gallina v. Fraser*, 278 F.2d 77, 78 (2d Cir.1960), but also noting that no such exception has ever been employed in an extradition case).

Although we, and other courts, have held that habeas jurisdiction for claims arising under the Torture Convention or the FARR Act has not been repealed for immigration cases, *see, e.g., INS v. St. Cyr*, 533 U.S. 289, 298–99, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001); *Singh v. Ashcroft*, 351 F.3d 435, 441–42 (9th Cir.2003); *Wang v. Ashcroft*, 320 F.3d 130, 142–43 (2d Cir. 2003); *Ogbudimkpa v. Ashcroft*, 342 F.3d 207, 216–17 (3rd Cir.2003), the same reasoning does not extend to review in the context of extradition. Habeas jurisdiction has never encompassed review that is within the Rule of Non–Inquiry. Extradi-

tion is quintessentially a matter of foreign policy; it occurs only pursuant to an international agreement and is invoked by a foreign government. Immigration, on the other hand, is a matter solely between the United States and an alien. *See McMullen v. INS,* 788 F.2d 591, 596 (9th Cir. 1986). The FARR Act incorporates the distinction between extradition and immigration, and we see no basis in it for changing the regime that has long applied to extradition.

Accordingly, we conclude that the Secretary of State's determination to surrender Cornejo–Barreto to Mexico is within the Rule of Non–Inquiry, and therefore not subject to judicial review.

AFFIRMED.